UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THE ADVOCATES FOR HUMAN RIGHTS;<br>330 Second Avenue South, Suite 800<br>Minneapolis, MN 55401<br><br>and<br><br>L.H.M., through her next friend C.A.<br>c/o Fredrikson & Byron, P.A.<br>60 South Sixth Street, Suite 1500<br>Minneapolis, MN 55402-4400<br><br>        Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY;<br>2707 Martin Luther King, Jr. Ave. SE<br>Washington, DC 20528<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security;<br>2707 Martin Luther King, Jr. Ave. SE<br>Washington, DC 20528<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;<br>500 12th St. SW<br>Washington, DC 20536<br><br>TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement;<br>500 12th St. SW<br>Washington, DC 20536 | Case No.   0:26-cv-749<br><br>**CLASS ACTION COMPLAINT** |

MARCOS CHARLES, in his official capacity as the Acting Executive Director for Immigration and Customs Enforcement's Enforcement and Removal Operations;
500 12th St. SW
Washington, DC 20536

DAVID EASTERWOOD, in his official capacity as Acting Field Office Director for Immigration and Customs Enforcement's Enforcement and Removal Operations St. Paul Field Office;
1 Federal Drive
Suite 1601
Fort Snelling, MN 55111

U.S. FEDERAL PROTECTIVE SERVICE;
2707 Martin Luther King, Jr. Ave. SE
Washington, DC 20528

and

FARON K. PARAMORE, in his official capacity as Director of the Federal Protective Service,
2707 Martin Luther King, Jr. Ave. SE
Washington, DC 20528

   Defendants.

"Nations, like individuals, reap exactly what they sow;

they who sow robbery reap robbery."

-*Bishop Henry Whipple, namesake of the Bishop Henry Whipple Federal Building.*

## INTRODUCTION

1. The Bishop Henry Whipple Federal Building ("Whipple"), named in honor of Minnesota's first Episcopal bishop and one of its preeminent 19th-century advocates for the rights of non-citizens, is now the epicenter of the systematic deprivation of fundamental constitutional and legal rights at the hands of the federal government.

2. The Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") have long recognized that those they detain have a right to counsel, and have established a straightforward legal framework to ensure some consistent minimum access to that right. But at Whipple, Defendants are feigning ignorance of these requirements, erecting artificial barriers to access, and preventing many detainees from contacting and conferring with their attorneys.

3. Defendants are following the same pattern here that they have followed in other American cities in recent months. In September, the U.S. District Court for the Southern District of New York ordered DHS, ICE, and many of the other Defendants in this case to provide ICE detainees at a New York facility with adequate access to counsel; in November, the U.S. District Court for the Northern District of Illinois did the same for ICE detainees in an Illinois facility. *Mercado v. Noem*, 800 F.Supp.3d 526 (S.D.N.Y. 2025); *Gonzalez v. Noem*, No. 25 C 13323, 2025 WL 3170784 (N.D. Ill. Nov. 5, 2025).

4. These violations of Immigration and Customs Enforcement policies, statutes, and fundamental constitutional rights are not merely technical; without access to assistance from attorneys, immigration detainees face immediate transfer away from their counsel and family in Minnesota and, in some cases, rapid removal from the United States, all before the attorneys prepared to represent them have a meaningful opportunity to do so.

1

## PARTIES

5.     Plaintiff The Advocates for Human Rights ("AHR") is an independent, nonpartisan nonprofit organization founded in 1983 and headquartered in Minneapolis. AHR works to promote and protect internationally recognized human rights standards by promoting civil society and reinforcing the rule of law. AHR's Immigration Legal Services Program (ILS) provides free legal representation to low-income immigrants in the upper Midwest, including asylum seekers, individuals in detention, unaccompanied children, and trafficking survivors. ILS has seven full-time staff attorneys and two full-time fellows who provide direct legal services. AHR works with more than 576 volunteer attorneys, whom AHR provides with training, technical support, malpractice insurance coverage, and access to interpreters and social service support. AHR has represented, presently represents, and will continue to represent individuals held in immigration detention at Whipple.

6.     Plaintiff L.H.M. is a resident of St. Paul, Minnesota, where she has lived since July of 2019. She is in removal proceedings with a pending asylum application. On January 27, 2026, she arrived at the offices of the Intensive Supervision Appearance Program in Bloomington, Minnesota for a check-in as part of Order of Supervision with Immigration and Customs Enforcement ("ICE"). She was arrested after entering the ISAP offices, and, on information and belief, is currently being detained by Defendants at the Whipple Building. L.H.M. recently had cranial surgery and has significant medical needs that may be severely adversely affected by detention conditions or involuntary transfer out of state. L.H.M.'s family contacted her attorney in her removal and asylum proceedings, who immediately went to the Whipple Building to consult with her so that a habeas petition could be promptly filed. Defendants refused to allow L.H.M.'s attorney to speak with her. C.A., a resident of St. Paul, Minnesota, is representing L.H.M. as her next friend in this case.

7. Defendant United States Department of Homeland Security ("DHS") is a federal executive agency responsible for enforcing federal immigration laws. DHS is, at the time of filing, a legal custodian of Plaintiff L.H.M. and the members of the proposed Class.

8. Defendant Kristi Noem is the Secretary of the DHS. Defendant Noem is, at the time of filing, a legal custodian of Plaintiff L.H.M. and the members of the proposed Class. She is sued in her official capacity.

9. Defendant United States Immigration and Customs Enforcement ("ICE") is a federal law enforcement agency within DHS. ICE is responsible for the enforcement of immigration laws, including detention and removal of immigrants. ICE is, at the time of filing, a legal custodian of Plaintiff L.H.M. and the members of the proposed Class.

10. Defendant Todd Lyons is the Acting Director of ICE. Defendant Lyons is, at the time of filing, a legal custodian of Plaintiff L.H.M. and the members of the proposed Class. He is sued in his official capacity.

11. Defendant Marcos Charles is the Acting Executive Director for ICE's Enforcement and Removal Operations ("ERO"). Defendant Charles is, at the time of filing, a legal custodian of Plaintiff L.H.M. and the members of the proposed Class. He is sued in his official capacity.

12. Defendant David Easterwood is the Acting Field Office Director for ICE's ERO St. Paul Field Office, which has jurisdiction over the ERO detention at Whipple. Defendant Easterwood is, at the time of filing, a legal custodian of Plaintiff L.H.M. and the members of the proposed Class. He is sued in his official capacity.

13. Defendant Federal Protective Service ("FPS") is a federal law enforcement agency within DHS. FPS is responsible for security and protection of federal buildings, including Whipple.

14. Defendant Faron K. Paramore is the Director of FPS. He is sued in his official capacity.

## JURISDICTION

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201, and 2202, and Fed. R. Civ. P. 65.

16. Venue is proper under 28 U.S.C. §§ 1391(b)(2), (e)(1) because at the time of filing, Plaintiff AHR is headquartered in this district, Plaintiff L.H.M. is detained in Defendants' custody within this District, a substantial part of the events and omissions giving rise to these claims occurred and are continuing to occur in this District, and Defendants are officers or employees of the United States acting in their official capacities.

## FACTS

17. Beginning in early December 2025, Defendants launched what they have dubbed "Operation Metro Surge," the self-described "largest DHS operation ever." Rebecca Santana & Mike Balsamo, *Homeland Security plans 2,000 officers in Minnesota for its 'largest immigration operation ever,'* AP (Jan. 6, 2026), https://perma.cc/M98E-6YR6.

18. The centerpiece of the operation is large-scale immigration enforcement in the Twin Cities.

19. From the outset, Operation Metro Surge has created an unprecedented and dangerous level of chaos in Minnesota.

20. ICE has undertaken a massive campaign of indiscriminate and violent immigration arrests, abandoning longstanding practices and requirements in the process.

21. As of January 19, Defendant Noem claims that ICE has arrested over 10,000 immigrants in Minneapolis. In the same statement, she also claimed that the number of arrests of "criminal illegal aliens" was 3,000.

4

22. Regardless of whether either of Defendant Noem's claims is accurate, hundreds of individuals have been arrested by ICE for potential removal ("detainees") each day since the start of Operation Metro Surge. The vast majority of those individuals have been transported directly to detention at Whipple.

23. Defendants' enforcement tactics have involved numerous violent and controversial actions, prompting widespread protests. ICE agents have killed at least two people in Minneapolis, including one on January 24, and have assaulted countless more, including with pepper spray and pepper balls.

24. In response to ICE activity, there have been protests at Whipple, and in at least some instances, federal law enforcement has fired flashbangs and tear gas outside Whipple.

25. These incidents reflect only a small fraction of the chaos and abuses which have characterized Operation Metro Surge.

26. Historically, prior to December 2025, carceral facilities at Whipple have been used exclusively for short-term holding (generally, periods under 12 hours).

27. The Whipple facilities lack beds, adequate toilets, and other infrastructure—including private phones where privileged calls may be conducted—needed to hold incarcerated individuals for longer periods of time. Nonetheless, Defendants are now holding some detainees in Whipple for days at a time.

28. Whipple has several "visitation rooms" that, in prior years, were used for attorney-client visits while detainees were held at Whipple. On information and belief, Whipple previously complied with Defendant ICE's National Detention Standards, which require "[p]rivate consultation rooms" to be made available for meetings with counsel. ICE, *National Detention Standards* 168 (revised 2025), https://perma.cc/CK4U-FTSC (last visited Jan. 22, 2026).

5

29. Since at least January 11, 2026, however, Defendants have not provided detainees at Whipple with constitutionally adequate or statutorily compliant access to counsel. Defendants' policies regarding detainees' access to counsel are even more restrictive for ICE detainees than for pre-trial criminal detainees at Whipple.

30. Since at least January 11, 2026, federal agents at Whipple, including FPS officers and at least one ICE attorney, have told attorneys for detainees that no visitation between detainees and attorneys is or has ever been permitted at Whipple. This is false; Whipple has rooms labeled "ERO Visitation," where attorneys have met with clients held at Whipple for years.

31. Defendants have also informed attorneys for detainees that they need to make an appointment to schedule visits with detainees. However, Defendants currently make it impossible for attorneys to arrange visitation in advance. Defendants do not answer either of the phone numbers associated with the facility, nor do they respond to emails sent to their publicly available email address.

32. Many detainees who arrive at Whipple are not granted an outgoing phone call, which could be used to contact an attorney or to contact family members who might have arranged representation or be able to do so. Instead, officials at Whipple have informed detainees' attorneys that detainees will not be allowed to make an outgoing phone call until after they have been "booked," by which time the detainees have generally been transferred to a different immigration detention facility—usually or always outside Minnesota.

33. Even when Defendants permit detainees to make a phone call, there is no place for detainees to call counsel privately. The only phones that detainees are allowed to use are not private, and ICE personnel can and do listen to phone calls made from them.

34. Defendants routinely transfer detainees out of state before they can speak with their attorneys, even when the attorney has already informed Defendants that they

represent the detainee and need to speak with them. This severely curtails attorney-client communication and detainees' ability to be represented by counsel of their choosing. And while they are preventing detainees from consulting with their attorneys about their rights and any efforts underway in Minnesota courts to secure their release, they often pressure detainees to abandon those rights by signing voluntary departure forms to, as Defendants call it, "self-deport."

35. In addition, Defendants have created unnecessary and unreasonable physical obstacles to visitation.

36. Accessing the Whipple building sometimes requires attorneys to move through areas of confrontation between protestors and ICE agents, including areas where tear gas has been or is being deployed.

37. Defendants' personnel have threatened or intimidated lawyers attempting to visit clients. On at least one occasion, an attorney visiting Whipple with permission from facility officials was threatened with arrest for moving toward the entrance. On another occasion, when a lawyer attempted to visit a client, he was confronted by six armed security personnel, one of whom said, "We're not having a debate here, turn your car around and get the hell out of here."

## CLASS ALLEGATIONS

38. Plaintiff L.H.M., through her next friend, C.A., brings this action under Fed. R. Civ. P. 23(a), (b)(2) on behalf of L.H.M. and all other persons similarly situated.

39. Plaintiff L.H.M., through her next friend, C.A., seeks to represent the following class: All persons initially detained in Minnesota pursuant to the Immigration and Nationality Act ("INA").

40. The proposed Class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). On information and belief, Defendants have

detained thousands of people in Minnesota over the last few weeks, and continue to detain dozens if not hundreds more each day.

41. The proposed Class's claims turn on common questions of fact or law that are capable of class-wide resolution. *See* Fed. R. Civ. P. 23(a)(2). For example, whether Defendants' practices violate class members' constitutional and statutory rights is a common question that is the same for all Class members.

42. The proposed Class Representatives' claims are typical of the claims of the proposed Class. *See* Fed. R. Civ. P. 23(a)(3). Each member's claims arise from the same course of events: their detention and Defendants' denial of their access to counsel during that detention. And each class member has experienced, is experiencing, or will experience the same injuries (injuries to their First and Fifth Amendment rights, as well as their rights under the INA) if relief is denied.

43. The proposed Class Representatives will fairly and adequately represent the Class. *See* Fed. R. Civ. P. 23(a)(4). The proposed Class Representatives are committed to seeking declaratory and injunctive relief that will benefit all members of the Class equally, restoring meaningful access to counsel for pre-trial detainees initially detained in Minnesota. They are aware of their obligations as proposed Class Representatives and are willing to dedicate time and effort to pursuing the interests of the Class.

44. The proposed Class Representatives are represented by counsel with extensive experience in administrative law and class actions, who are committed to zealously representing the Class. *See* Fed. R. Civ. P. 23(a)(4), (g).

45. Defendants have acted or refused to act on grounds that apply generally to the proposed Class, applying similar practices to deny or substantially interfere with access to counsel. Injunctive relief prohibiting that interference and requiring adequate access to counsel is therefore appropriate with respect to the proposed Class as a whole. *See* Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT 1:
### First Amendment
### (All Plaintiffs)

46. Plaintiffs reallege and incorporate by reference the paragraphs above.

47. The First Amendment to the United States Constitution guarantees all persons, including detained immigrants, the right to hire, consult, and communicate with an attorney. The government may not unreasonably restrict that right.

48. By unreasonably interfering with and/or entirely preventing Plaintiff L.H.M.'s and the proposed Class's ability to retain, consult, and communicate with counsel, Defendants have violated and continue to violate their rights under the First Amendment.

49. The First Amendment also guarantees detained immigrants the right to petition the government for redress of grievances. *See Bounds v. Smith*, 430 U.S. 817 (1977). This right encompasses the right to file civil actions in court and the right to petition agencies for immigration benefits or statuses which, if granted, would serve as defenses against removal.

50. Defendants' actions have denied Plaintiff L.H.M. and the proposed Class the ability to seek legal representation and prepare evidence in support of *habeas* petitions and other legal proceedings.

51. Plaintiff L.H.M. and the proposed Class have suffered and will continue imminently to suffer irreparable injury as a result of Defendants' violation of their First Amendment rights.

### COUNT 2:
### First Amendment
### (AHR)

52. Plaintiffs reallege and incorporate by reference the paragraphs above.

9

53. The First Amendment to the United States Constitution guarantees attorneys the rights of free association and speech, which each include the right to provide representation to individuals who wish to retain their services—including the ability to communicate and consult with those individuals. The government may not unreasonably restrict those rights.

54. That right also encompasses the rights of attorneys to provide legal advice to clients and to make effectively crafted legal arguments on their behalf. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001); *In re Primus*, 436 U.S. 412 (1978).

55. By unreasonably interfering with and/or entirely preventing AHR, its staff, and its volunteer attorneys from visiting, contacting, or otherwise communicating with detainees, including detainees who have retained or wish to retain the services of AHR, Defendants have violated and continue to violate AHR and its attorneys' rights under the First Amendment.

56. By unreasonably interfering with and/or entirely preventing detainees' ability to contact, retain, consult, and communicate with counsel, including AHR and its attorneys, Defendants have violated and continue to violate AHR and its attorneys' rights under the First Amendment.

57. AHR and its attorneys have suffered and will continue to suffer irreparable injury as a result of Defendants' violation of their First Amendment rights.

## COUNT 3:
## Fifth Amendment
## (All Plaintiffs)

58. Plaintiffs reallege and incorporate by reference the paragraphs above.

59. The Due Process Clause of the Fifth Amendment guarantees immigration detainees the right to a full and fair hearing in removal cases. *See Al Khouri v. Ashcroft*, 362 F.3d 461 (8th Cir. 2004).

60. The Due Process Clause also guarantees detained noncitizens the right to be represented by counsel of their choice at no expense to the government. This constitutional right encompasses the right to *effective assistance* of counsel. *See United States v. Torres-Sanchez*, 68 F.3d 227 (8th Cir. 1995).

61. Defendants have violated and continue to violate Plaintiff L.H.M.'s and the proposed Class's Fifth Amendment right to representation by counsel by their actions interfering with and/or entirely preventing detainees' ability to contact, retain, consult, and communicate with counsel.

62. Defendants have violated and continue to violate Plaintiff L.H.M.'s and the proposed Class's Fifth Amendment right to effective assistance of counsel by their actions interfering with detainees' ability to communicate with counsel regarding evidence and potential witnesses relevant to anticipated removal proceedings.

## COUNT 4:
### Immigration and Nationality Act
### (All Plaintiffs)

63. The INA guarantees noncitizens the "privilege of being represented, at no expense to the Government, by counsel of [their] choosing" in removal proceedings. 8 U.S.C. § 1229a(b)(4)(A); 8 U.S.C. § 1362.

64. By interfering with and/or entirely preventing detainees' ability to contact, retain, consult, and communicate with counsel, Defendants have prevented and will continue to prevent Plaintiff L.H.M. and the proposed Class from exercising their lawful statutory privilege to be represented in removal proceedings.

## COUNT 5:
### Administrative Procedure Act, Not in Accordance With Law
### (Immigration and Nationality Act)
### (All Plaintiffs)

65. Plaintiffs reallege and incorporate by reference the paragraphs above.

11

66. The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" which is "not in accordance with law." 5 U.S.C. § 706(2)(A).

67. Defendants' actions preventing detainees from contacting, retaining, consulting, and communicating with counsel or establishing *ad hoc* barriers to doing so are final agency action subject to review under the Administrative Procedure Act. 5 U.S.C. § 704.

68. To the extent violations of the INA do not give rise to an independent cause of action, "no other adequate remedy in a court" to vindicate rights under the INA exists besides an action under the Administrative Procedure Act. 5 U.S.C. § 704.

69. Defendants' policy substantially interfering with and/or denying counsel visits violates noncitizen detainees' rights under the INA, and is, accordingly, not in accordance with law.

## COUNT 6:
### *Accardi* Doctrine
### (All Plaintiffs)

70. Plaintiffs reallege and incorporate by reference the paragraphs above.

71. An agency's unexplained failure to abide by its own rules constitutes "arbitrary" and "capricious" conduct in violation of the Administrative Procedure Act. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

72. Operation of ICE detention facilities is regulated by the ICE National Detention Standards ("NDS"). Specifically, NDS requires that "[f]acilities shall allow detainees to meet privately with their current or prospective legal representatives and legal assistants." ICE, *National Detention Standards* 163 (revised 2025), https://perma.cc/CK4U-FTSC (last visited Jan. 22, 2026).

73. NDS further requires that such visits be permitted "seven days a week, including holidays," for "a minimum of eight hours per day on regular business days." *Id*. at 166.

74. And NDS provides that such visits "are confidential and shall not be subject to auditory supervision. Private consultation rooms shall be available for such meetings." *Id.* at 168.

75. Despite these provisions, detainees at Whipple have regularly been denied access to their counsel.

76. Since at least January 15, 2026, Defendants have not permitted visitation for the time windows required by NDS, nor have they made private consultation rooms available.

77. Defendants' actions preventing persons detained at Whipple from contacting and communicating with attorneys, and vice versa, flout the National Detention Standards without explanation or any formal change to procedures or requirements.

78. Defendants' ongoing violations of their own National Detention Standards has injured and continues to injure Plaintiff L.H.M. and the proposed Class.

## COUNT 7:
### Administrative Procedure Act, Arbitrary and Capricious
### (*Accardi* Doctrine)
### (All Plaintiffs)

79. Plaintiffs reallege and incorporate by reference the paragraphs above.

80. ICE has failed, without explanation, to abide by NDS.

81. ICE's denial of detainees' access to counsel and restricting such access more narrowly than required by the NDS is final agency action subject to review under the Administrative Procedure Act. 5 U.S.C. § 704.

82. Such actions are arbitrary and capricious and must be held unlawful and set aside. 5 U.S.C. § 706(2)(A).

83. To the extent the *Accardi* doctrine cannot sustain an independent cause of action, "no other adequate remedy in a court" exists to vindicate violation of rights under the *Accardi* doctrine except an action under the Administrative Procedure Act. 5 U.S.C. § 704.

## COUNT 8:
### Administrative Procedure Act, Arbitrary and Capricious
### (All Plaintiffs)

84. Plaintiffs reallege and incorporate by reference the paragraphs above.

85. Defendants' actions which prevent detainees from contacting, retaining, consulting, and communicating with counsel or which establish *ad hoc* barriers to doing so are final agency action subject to review under the Administrative Procedure Act. 5 U.S.C. § 704.

86. Defendants' policy denying access to counsel is a departure from prior policy, which permitted such access, and has not been explained.

87. An unexplained change in policy is arbitrary and capricious under the Administrative Procedure Act and must be held unlawful and set aside. 5 U.S.C. § 706(2)(A); *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief:

1. Declare that the suit is maintainable as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2).
2. Declare that Defendants have violated and are violating Plaintiffs' First Amendment rights;
3. Declare that Defendants have violated and are violating the Fifth Amendment and statutory rights of Plaintiff L.H.M. and the members of the proposed Class;

14

4. Declare that Defendants have violated and are violating the Immigration and Nationality Act, the Administrative Procedure Act, and the *Accardi* doctrine;

5. Preliminarily and permanently order Defendants to allow Plaintiff L.H.M. and the members of the proposed Class to consult with attorneys while in detention;

6. Preliminarily and permanently enjoin Defendants from:

    a. Impeding attorney-client communication between Plaintiff L.H.M. or members of the proposed Class and their attorneys; and

    b. Retaliating in any form against any Plaintiff or Class Member for asserting their constitutional rights;

7. Award Plaintiffs reasonable attorneys' fees and costs in this action; and

8. Grant such other relief as the Court deems just and proper.

Dated: January 27, 2026                    Respectfully submitted,

<div style="margin-left: 3em;">

*s/ Alethea M. Huyser*
Alethea M. Huyser (#0389270)
Rachel L. Dougherty (#0399947)
Devin T. Driscoll (#0399948)
Sarah Theisen (#0402844)
Margaret G. Severson (#0504388)
**Fredrikson & Byron, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
P: (612) 492-7000
ahuyser@fredlaw.com
rdougherty@fredlaw.com
ddriscoll@fredlaw.com
stheisen@fredlaw.com
mseverson@fredlaw.com

Jeffrey B. Dubner*
Aman T. George*
Mark B. Samburg*
Anashua Dutta*
Elena Goldstein*
**Democracy Forward Foundation**
P.O. Box 34553
Washington, DC 20043
P: (202) 448-9090
jdubner@c.democracyforward.org
ageorge@democracyforward.org
msamburg@democracyforward.org
adutta@democracyforward.org
egoldstein@democracyforward.org

*pro hac vice *application forthcoming*

**Counsel for Plaintiffs**

</div>