UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Advocates for Human Rights and L.H.M., through her next friend C.A., | Court File No. 0:260-cv-00749 (NEB/DLM) |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; MARCOS CHARLES, in his official capacity as the Acting Executive Director for Immigration and Customs Enforcement's Enforcement and Removal Operations; DAVID EASTERWOOD, in his official capacity as Acting Field Office Director for Immigration and Customs Enforcement's Enforcement and Removal Operations St. Paul Field Office; U.S. FEDERAL PROTECTIVE SERVICE; and FARON K. PARAMORE, in his official capacity as Director of the Federal Protective Service, | **DECLARATION OF JOHN P. CHITWOOD** |
| Defendants. | |

# DECLARATION OF JOHN P. CHITWOOD, ATTORNEY AT LAW

I, John Chitwood, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and Minn. Stat. § 358.116 that the following is true and correct:

## Identity and Role

1. I am an attorney in good standing and licensed to practice law in the State of Minnesota since 2007. My legal practice is focused exclusively on criminal defense. Additionally, I am one of only approximately 53 attorneys certified as a Criminal Law Specialist by the Minnesota State Bar Association ("MSBA"). I am a member of the Minnesota State Bar Association, and am currently the Treasurer of the Minnesota Association of Criminal Defense Lawyers ("MACDL").

2. I make this declaration based on my personal knowledge of the events described herein.

## Background

3. My client is a native-born United States citizen and a combat-wounded Iraq War veteran. On Tuesday January 13, 2026, at approximately 10:00 a.m., my client was standing on a public sidewalk and lawfully expressing his disapproval while U.S. Immigration and Customs Enforcement ("ICE") agents were detaining a teenage neighbor.

4. Despite engaging in lawful protest and not physically interfering with ICE action, ICE agents rushed towards him and violently tackled him to the sidewalk before being handcuffed.

5. He later described to me that the amount of force and violence used to capture him as greater than the amount of force he generally witnessed being used to detain enemy combatants when he served in Iraq.

6. He was seized and transported to the Whipple Building.

## My Arrival and Attempts to Access Client

7. At approximately 11:30 a.m., I arrived at the ICE facility located at Whipple and advised staff that I was there to see my U.S. citizen client who had been detained.

8. At approximately 12:15 p.m., an ICE staff member came to take my client's name.

9. At approximately 12:50 p.m., the same staff member returned and informed me that my client had stated he did not have a lawyer. The staff member said that I needed to leave. I politely but firmly refused to leave and demanded access to my client.

**Interaction with ICE Attorney**

10. The staff member expressed frustration and said he needed to speak with "counsel attorney."

11. At approximately 1:45 p.m., I was taken to speak with Roman Maney, a man who identified himself as an attorney with the Office of the Principal Legal Advisor.

12. Mr. Maney stated that because my client had not explicitly requested me by name, I would not be allowed to see him. He further stated that my client was still "being processed," despite nearly four hours having passed since his detention.

13. I indicated I would wait until processing was complete, but Mr. Maney reiterated that unless my client asked for me by name, I would be denied access to speak with him.

14. I explained that most law-abiding individuals do not have an attorney's name memorized and that my client was unaware his family had retained me.

15. Mr. Maney then began to ask a series of intrusive and inappropriate questions regarding the nature of my representation, insinuated dishonesty on my part- that I might be lying to him about being counsel for my client, suggested my client did not want an attorney, and demanded to see a signed representation agreement. The conversation lasted approximately ten minutes before Mr. Maney ended it.

16. He further stated that my client had already been allowed access to a telephone, and that if he had not called me, I should regard that as my client wanting to waive his right to the presence of counsel.

17. I remained in the building until approximately 2:45pm when I returned to my truck in the parking lot inside the secure area at Whipple.

**Client's Release and Conditions of Detention**

18. At approximately 5:30 p.m., I learned that my client had been released when I saw him walk out of the security area and across the street toward the crowd of people peacefully protesting ICE.

19. According to my client, he was never provided access to a phone to contact his wife or anyone else for the entire time that he was in ICE custody.

20. Additionally, he was unaware that I had been present at Whipple to assist him since about 11:30am.  He told me that at some point, ICE agents asked him if he had a lawyer; he responded that he did not.  Because there were no clocks visible to him, he is uncertain of the exact time but believes this was mid-afternoon.

21. ICE never told him that his family had retained an attorney to represent him, much less than I was present at the Whipple building demanding access to my client.

22. My client reported that ICE held him for approximately seven hours and then told him that he was not being charged.  He was then unceremoniously released out of the front door of the Whipple building into the January cold wearing only his sweatshirt and without his cell phone or any way to contact his wife.

23. He appeared physically and emotionally drained after being forcibly detained and held without access to counsel or communication.

24. Concerningly, the right side of his face already showed a significant amount of bruising visible to me, despite it being dark and only having streetlights for illumination.

**Conclusion**

25. These events demonstrate that my client, a U.S. citizen, was unlawfully detained by ICE for exercising constitutionally protected rights, denied access to counsel despite my repeated requests, and deprived of the ability to contact his family or attorney during his detention.

I declare under penalty of perjury that everything I have stated in this document is true and correct.

Dated: 1/26/2026

John P. Chitwood, Attorney at Law
(MN#388254)