UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Advocates for Human Rights and
L.H.M., through her next friend C.A.,

        Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; KRISTI NOEM, in her
official capacity as Secretary of
Homeland Security; U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT; TODD LYONS, in
his official capacity as Acting Director of
Immigration and Customs Enforcement;
MARCOS CHARLES, in his official
capacity as the Acting Executive Director
for Immigration and Customs
Enforcement's Enforcement and Removal
Operations; DAVID EASTERWOOD, in
his official capacity as Acting Field
Office Director for Immigration and
Customs Enforcement's Enforcement and
Removal Operations St. Paul Field
Office; U.S. FEDERAL PROTECTIVE
SERVICE; and FARON K. PARAMORE,
in his official capacity as Director of the
Federal Protective Service,

        Defendants.

Court File No. 0:260-cv-00749 (NEB/DLM)

**DECLARATION OF GLORIA
CONTRERAS EDIN**

---

## DECLARATION OF GLORIA CONTRERAS EDIN

I, Gloria Contreras Edin, declare the following is true and accurate to the best of my knowledge and recollection.

1.      I am an immigration attorney based in the Minneapolis area. I have practiced law for 20 years. In 2009, I founded Contreras Edin Law, PA to build an immigration law practice. I handle a wide variety of cases, including family-based visas, U-visas, temporary protected status ("TPS"), asylum applications, employment visas, appeals to the Board of Immigration Appeals ("BIA"), adjustment of status, and naturalization. I am licensed to practice in the Minnesota state and federal courts, the U.S. Courts of Appeals for the Fifth, Eighth, and Ninth Circuits, and the U.S. Supreme Court. I am a member of the American Immigration Lawyers Association ("AILA"). I also serve as an adjunct professor of Immigration Law at Mitchell Hamline School of Law. I have been named one of the most influential lawyers in the country in *The New York Times* (2023), *USA Today* (2024), and the *Washington Post* (2025) by Lawyers of Distinction.

2.      I have been representing clients detained before EOIR Bloomington, Minnesota for almost 20 years.  At present detainees are held at the Henry Whipple Building.  Since Operation Metro Surge began, ICE has made it virtually impossible for attorneys to see their clients detained at Whipple. I go to Whipple three or four times per week to represent clients in immigration court. It looks like a military compound as opposed to a courthouse. It is not the same place it was last year. The increase in ICE and CBP agents found in the building and parking lot make the place intimidating.

3.      Since the commencement of what has been referred to as "Operation Metro Surge," I have observed a substantial increase in the number of my clients detained by Immigration and Customs Enforcement ("ICE") at Whipple.

4.      Since that time, my office has filed approximately twenty-one petitions for writs of habeas corpus on behalf of detained clients.

5.      Preparing habeas corpus petitions requires significant factual investigation, legal analysis, drafting, and compilation of supporting documentation. These filings ordinarily require meaningful consultation with the detained individual and cannot reasonably be completed instantaneously.

6.      Since Operation Metro Surge began, ICE has transferred many of my clients from Whipple to out-of-state detention facilities within very short timeframes following detention. In several instances, transfers occurred within hours of arrest.

7.      By way of example, a client whom I represent in a pending U-visa matter was detained by ICE late on Friday, January 23, 2026. He contacted me from Whipple at approximately 11:30 p.m. that evening to report his detention. I immediately began preparing a habeas petition and filed it at approximately 2:30 a.m. on January 24, 2026.

8.      In another matter, a client was detained on Thursday, January 22, 2026. I was unable to locate him on the ICE Detainee Locator that day or the following day. When I attempted to file a habeas petition on his behalf on the morning of Sunday, January 25, 2026, I learned that he had already been transferred to El Paso, Texas. I am now coordinating with Texas-based counsel and pursuing admission pro hac vice in order to continue representing him.

9.      On January 26, 2026, a client was detained at approximately 1:00 p.m. and taken to Whipple. That same day, he was transferred to El Paso, Texas. I filed a habeas corpus petition and an emergency motion for temporary restraining order within hours of his detention; however, the transfer occurred notwithstanding those filings.

10.     Also on January 26, 2026, another client, who had been granted deferred action in connection with a pending U-visa application, was detained while present outside a USCIS facility for a scheduled appointment. I filed a habeas petition on her behalf that same day.

11.     On January 26, 2026, another client was detained at approximately 6:00 a.m. while traveling to work. He is a single parent with sole custody of his two-year-old child. Despite the prompt filing of a habeas petition within hours of his detention, he was transferred to El Paso, Texas.

12.     Based on my experience, unless counsel is able to file a habeas petition almost immediately following detention at Whipple, clients are frequently transferred out of state within a matter of hours. Once transferred to Texas, representation becomes substantially more difficult. Continued representation requires securing local counsel to sponsor a pro hac vice application and navigating additional logistical barriers, including limited attorney-client communication. Several clients have reported significant restrictions on phone access while detained out of state.

13.     These rapid transfers have materially interfered with my ability to meet with clients, develop facts, consult meaningfully, and seek timely judicial review of detention decisions.

14.     For the most part, unless I can file immediately, my clients detained at Whipple are moved within a few hours to Texas. Once my clients are in Texas, it becomes exponentially more difficult to represent them. When a client is transferred to Texas, I have to find an attorney to sponsor my *pro hac vice* application in Texas, which adds another time-consuming step to my representation. Transfers to Texas also raise several other logistical barriers to representation, including communicating with my clients. One client has reported that she is only allowed to call me once every eight days. Other clients report overpopulation and continuous illness spreading throughout the jail, that impedes their ability to communicate effectively with me.

15.     The environment that ICE has created for attorneys and detainees alike is terrifying. If detainees are allowed to communicate with family or counsel from Whipple – which is a huge "if" – counsel usually does not have time to file a habeas petition before ICE transfers the client to Texas. And once the client is in Texas, attorneys struggle to access their clients.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 1/28/26

Gloria Contreras Edin