UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Advocates for Human Rights and L.H.M., through her next friend C.A., | Court File No. 0:260-cv-00749 (NEB/DLM) |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; MARCOS CHARLES, in his official capacity as the Acting Executive Director for Immigration and Customs Enforcement's Enforcement and Removal Operations; DAVID EASTERWOOD, in his official capacity as Acting Field Office Director for Immigration and Customs Enforcement's Enforcement and Removal Operations St. Paul Field Office; U.S. FEDERAL PROTECTIVE SERVICE; and FARON K. PARAMORE, in his official capacity as Director of the Federal Protective Service, | **DECLARATION OF MAX KELLER** |
| Defendants. | |

## DECLARATION OF MAX KELLER

I, Max Keller, declare the following is true and accurate to the best of my knowledge and recollection.

1. I am a criminal defense attorney based in the Minneapolis area. I am the founding partner of Keller Law Offices. I am licensed to practice in Minnesota and Maryland, as well as the U.S. District Court for the District of Minnesota and the Eighth Circuit Court of Appeals.

2. I have been licensed to practice law in the State of Minnesota for over 28 years, since October 1997. I am a member and past President of the Minnesota Society for Criminal Justice and a frequent speaker at Continuing Legal Education programs. I am a member of the Minnesota Association of Criminal Defense Lawyers ("MACDL") and the Minnesota State Bar Association ("MSBA") and its Criminal Law Section, of which I am the past chair. I have appeared in Immigration Court in Minnesota in the past.

3. I personally know of at least one other attorney who was denied access to a detained person at the Whipple Federal Building at Fort Snelling, Minneapolis, Minnesota in the last 10 days or so.

4. On Saturday, January 17, 2026, at around 2:00 p.m., my neighbor's adult daughter called me and told me her mother was detained by Immigrations and Customs Enforcement ("ICE"). Her mother is a white Caucasian native-born U.S. Citizen. She was detained around the area of United Hospital and Children's Hospital, both of which are in downtown St. Paul and are right next to each other. She was supposedly detained for threatening ICE/Border Patrol with a knife, which she did not do (she was not carrying a knife or any other weapon), and boxing a CPB agent in with her car, which she did not do. The St. Paul Police were called by Border Patrol and they arrived at the Children's Hospital where my client was parked in the parking lot seated in the driver's seat with another person in the front passenger's seat. The St. Paul police ordered my client out of the vehicle, frisked her, found <u>no</u> weapons, did <u>not</u> arrest her, and issued her a "warning." Immediately after that, she was detained by the same Border Patrol agent she had earlier photographed (while he was seated in his car on a public street).

5. My neighbor's husband and her adult daughter both asked me over the phone that day to represent my neighbor for the purposes of trying to get her released from detention. This declaration will refer to her as Jane Doe. I agreed to represent her pro bono because I believe that it is important that detained persons have a right to counsel and are allowed to speak to an attorney in person. Also, persons lawfully exercising their First Amendment rights, such as photographing a law enforcement officer who is in public, should not be illegally detained. The right of attorneys to meet with such detainees is vital to vindicate the detainees' right to counsel as well as their First Amendment rights.

6. I arrived at around 3:20pm on January 17, 2026 at the Bishop Henry Whipple Federal Building at 1 Federal Drive, Fort Snelling, Minnesota 55111. I drove to the front gate at

Whipple. There were roughly six heavily armed ICE agents and one private security guard behind the gate.

7. I explained to the private security guard that I was there to see a person who is detained by ICE in the Whipple Building. I showed the guard my driver's license and attorney card. The guard asked me if I had an appointment. I did not have an appointment because my client had just been detained.

8. The guard also said that they couldn't let me in because they had not received a call from the front desk to let them know that I was coming. I said "how would the front desk know that I'm coming? How would I set that up?" The guard did not answer these questions.

9. The guard called the front desk at Whipple. The front desk told the guard that they "didn't know anything about [me] coming in here." I told the guard that "people have the right to see an attorney."

10. At this point, one of the heavily armed ICE agents started threatening me and told me to "turn your car around and get the hell out of here."

11. One of the ICE agent's vehicles was blocking me in so he had to move his vehicle out of the way before I could get out.

12. My experience was consistent with what I had heard from friends and colleagues: that getting access to clients detained at Whipple was almost impossible.

13. At around 4pm on January 17, 2026, I returned home. Another criminal defense attorney, John Chitwood, who had also tried unsuccessfully to see a client detained at Whipple a few days before, sent me the number of the DHS duty attorney, Roman Maney. John Chitwood had spoken with Mr. Maney in-person a few days before when he tried to meet with a detained person at Whipple, and was turned away by Mr. Maney.

14. I called Roman Maney. He politely told me that I could see a detainee if I made an appointment. Then he texted me a link to a page that apparently would allow me to make an appointment with my client. The page did <u>not</u> say "attorney visitation." The website stated that visitation is open from 8am to 2pm, Monday to Friday.

15. These visitation hours are entirely inadequate and do not provide people like Jane Doe with access to counsel. People are getting detained by ICE at all hours and throughout the week, with numerous arrests over the weekend. Limiting visitation to a few hours a day, and completely excluding weekends and holidays, deprives many people who require representation of that representation when they need it the most.

16. The link sent by the DHS attorney provided an email address (generic) and a phone number. I contacted the email address by sending an email and I called the phone number, hoping that one of these attempts would allow me to make an appointment to see my client. The phone rang and was never answered, so that avenue to make an appointment on a Saturday late afternoon

was unsuccessful. The email I sent was never replied to except for an auto-reply with a bunch of generic information and no way for an attorney to make an appointment to see a detainee.

17. Moreover, John Chitwood told me that even if attorneys can make an appointment through this link to see their client, they would be told that they cannot see their client unless that client asked for the attorney "by name." He got this information from ICE (Roman Maney) when he was inside Whipple. But there is no way that a client who was just detained would know who their attorney is. Jane Doe's case is a good example: she had never previously needed a criminal lawyer, and certainly did not have one on retainer at the time federal agents arrested and detained her. Instead, her husband arranged counsel for her during her detention. Because ICE did not give her an opportunity to call her husband, she had no ability to learn the name of the lawyer he had retained. This is typical: in my experience, in many cases, after a person is arrested, their family member or friend retains an attorney without consulting them, because it is often impossible to contact a person who has just been arrested. This is particularly the case at Whipple, where people are often not given an opportunity to call out of the facility, let alone given a second opportunity to call out if the family member that they called did not know that they needed to find counsel before the first call. For ICE to say that an attorney cannot see their client because their client has not requested their attorney "by name" is thus an insurmountable barrier to the right to counsel for many people.

18. By 8:00 p.m. on Saturday January 17, 2026, I had gotten a phone call from my client stating that she had been released and was back home. I had spoken to her adult daughter several times that day, before and after I visited Whipple. My client was detained for roughly 7 hours. She was held incommunicado, with no access to a phone. When she was released, she was told that she would be federally charged with assaulting a federal officer. To date, she has not been charged with any crime in this matter, in state or federal court.

19. I would like to be able to represent more detained persons at Whipple in the future, to counsel them and help them gain their release, especially U.S. citizens. However, since I have not been allowed through the front gate, have not been allowed into the building, and was denied access to a detainee, I have been discouraged from representing similar such person in the future. The actions of ICE, Border Patrol, DHS, the federal government have chilled my rights and my clients' rights.  My rights as an attorney to see a client and my client's right to counsel have been violated.

I declare the foregoing is true and accurate to the best of my knowledge.

Dated: **1-21-2026**              */s/ Max A. Keller*
                                  Max A. Keller
                                  Minnesota Atty. # 0278816
                                  310 Fourth Ave. South, #1130
                                  Minneapolis MN 55415
                                  Ph. 651-247-6118