UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THE ADVOCATES FOR HUMAN RIGHTS, *et al.* | Case No. 0:26-cv-00749 (NEB/DLM) |
| Plaintiffs, | **DECLARATION OF CLAIRE GLENN** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

## DECLARATION OF CLAIRE GLENN

I, Claire Glenn, declare the following is true and accurate to the best of my knowledge and recollection.

1. I am a staff attorney at the Climate Defense Project where I provide criminal defense representation to activists and protestors, as well as indigent people from communities disproportionately targeted by the criminal system. I am based in the Twin Cities, Minnesota, though my work spans the state and, at times, the country. I also am a volunteer attorney with the Twin Cities Habeas Collective ("Collective"), an all-volunteer group that provides *pro bono* representation and other legal supports to individuals detained by Immigration and Customs Enforcement ("ICE") as part of "Operation Metro Surge." I began my litigation career as a public defender, first in Prince George's County, Maryland, and then in Hennepin County, Minnesota. I am licensed to practice in Minnesota, Maryland, and the District of Columbia, and admitted to practice before the United States District Court for the District of Minnesota.

2. I got involved with the Collective in early January 2026. Since then, I have filed habeas petitions for more than two dozen people, including multiple children, detained by ICE. Since Operation Metro Surge began, members of the Collective have supported the filing of more than 150 such petitions and counting. I only do habeas petitions through my work with the Collective. I have heard from all of my colleagues and co-counsel that their attempts to visit detained immigrant clients at Whipple is futile, so I have not attempted to do so myself.

3. Most people detained through Operation Metro Surge are brought to the Whipple building at Fort Snelling. From there, they are transferred to other detention facilities across the state and even across the country in a matter of days or even hours. One of my clients, for example, was detained at Whipple for only about an hour and was on a plane to Texas approximately three hours after she was first arrested.

4. ICE is rapidly moving immigrants from Whipple to detention facilities outside of the state and thus outside of the federal district. ICE is moving people so quickly that we frequently do not know where someone is detained. The ICE online detainee locator often lists an individual's location as "call ICE for details." But every time I have tried to call ICE's St. Paul Field Office I am met with a busy signal. I often learn where my clients are for the first time when ICE responds to my habeas petition, including by moving to transfer venue.

5. It is also my experience that, because ICE is detaining so many people and moving them so rapidly, they are frequently failing to properly book people and are making serious mistakes as a result. In two of my cases, for example, Respondents were unable to locate my clients for days after transporting them out of state. *See, e.g.,* M.S.V.I. v. Bondi, No. 26-cv-419; Estefania B.-I. v. Bondi, No. 26-cv-393. Similarly, I have had to file motions for orders to show cause where Respondents transported my clients out of state in violation of a court order enjoining

transfer or failed to comply with an order to return my clients to the state. *See, e.g.*, Sandra C. v. Bondi, No. 26-cv-283; see, e.g., J.B.C.O. et al v. Bondi, No. 26-cv-424.

6. Several of my clients who have been transported to Texas from Minnesota have reported that ICE agents lie to them about the status of their habeas cases and the merits of their claims and attempt to pressure them to sign voluntary deportation agreements.

7. Once a client is detained out of state, it becomes virtually impossible to communicate with them directly. My colleagues and I have worked to establish lines of communication with our clients detained in Texas, for example, with little success. I likewise have been unable to establish lines of communication with a client detained in New Mexico.

8. Even after ICE moves a person once, we are seeing that ICE will frequently move someone repeatedly from one federal judicial district to another. I am personally aware of several cases in which people detained as part of Operation Metro Surge were detained in three federal judicial districts in the span of a few days.

9. Frequently moving detained immigrants also frustrates their ability to pursue their legal interests in immigration court. It becomes difficult to communicate with counsel and coordinate the gathering of evidence in support of bond hearings or defenses to deportation as immigrants are frequently moved from place to place. I have also frequently seen that a person's EOIR hearings get scheduled in whatever location the immigrant is detained. In practice, this makes it less likely for a person to be released through an EOIR bond hearing when they do not have ties to the local community for the very reason that they have been moved by ICE away from their local community.

10. Our habeas petitions have relatively high success rates, and the vast majority have been granted in full or in part. And yet my clients often remain detained by ICE despite a court order for their release. I have had to file numerous motions requesting show cause orders in the past several weeks because ICE refuses to comply with orders to release my clients. In one of my cases, my client was told he would be transferred out of the Whipple building if an attorney did not produce a copy of the release order immediately. I immediately emailed a copy of the order to every contact I had at ICE, while my co-counsel rushed a hard copy of the order to the Whipple. ICE sent her away without even looking at the court order, and at one point told her she should call the ICE tip line to report the issue. Meanwhile my client remained detained until I could file an emergency motion and the judge issued an order to show cause.

I declare the foregoing is true and accurate to the best of my knowledge.

Dated: February 2, 2026
County: St. Croix County, Wisconsin

_____
Claire Glenn