UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THE ADVOCATES FOR HUMAN RIGHTS, *et al.* | Case No. 0:26-cv-00749 (NEB/DLM) |
| Plaintiffs, | **DECLARATION OF RYAN YOUNG** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

## DECLARATION OF RYAN YOUNG

I, Ryan Young, declare the following is true and accurate to the best of my knowledge and recollection.

1.     I am an attorney at Fredrikson & Byron, P.A. in Minneapolis, Minnesota. I handle a wide variety of litigation matters but primarily practice general business litigation including handling shareholder disputes, contract and commercial disputes, securities fraud, and investor broker disputes. I am licensed to practice in Minnesota state and federal court and have been practicing for 10 years.

2.     My practice does not primarily focus on immigration law. However, over the years and with the help of my colleagues and the firm's pro bono immigration counsel, I have taken on various cases pro bono representing clients seeking asylum in the United States that are referred to our firm through the Advocates for Human Rights, and other non-profits.

3.     I currently represent a client from Afghanistan who fled the country after the fall of the government to the Taliban. He is seeking asylum in the United States and is in removal proceedings. He has a pending asylum claim that was filed in June 2024. Those proceedings, until he was transferred out of this District, were pending in the Fort Snelling Immigration Court at the Whipple Building.

4.     On January 15, 2026, at 1:41PM, I received an email from an individual I had never met before stating that they were a relative of my client and informing me that they had learned my client had been detained earlier that day. I called him immediately at the number he provided, and he told me that he had received a call from my client's friend telling him that my client had been detained. He did not know why he was detained or where he was detained.

5.     I tried to use the ICE Online Detainee Locator System. My client came up but his location simply stated: "Call ICE For Details."

6.     My colleague called ICE directly and was told that our client was detained in Saint Paul, Minnesota, but the person would not offer any other details regarding his detention. We assumed he was likely detained at the Whipple Federal Building. I planned to go to the Whipple building to meet him directly and printed off a copy of my G-28 and other documents showing my status as the client's legal representative. I soon learned from multiple colleagues, however, that doing so would be pointless.

7.     I was informed by multiple colleagues that no noncitizens at Whipple were allowed access to counsel, that I would be unable to meet with my client, and that it would be a waste of time. I learned that multiple colleagues of mine, including attorneys Amanda Mills and Loan Huyhn, had been at Whipple all day attempting to obtain the release of another firm client who had a habeas

order granting the individual's release issued by Judge Blackwell, and they had still not been allowed to meet with their client.

8.      The next day on January 16, 2026, I learned from the ICE Detainee Locator that my client had been transferred to Camp East Montana at Fort Bliss in El Paso, Texas. The system to set up a call with a detainee required me to sign up as an attorney. My colleague and I tried to schedule a legal call, but the system provided no options for legal calls that day. We decided to schedule a legal call for the next earliest available time, which was the following day, Saturday, January 17 at 4:00PM.  My colleague and I waited for a half hour that day and received no call.  Ultimately, I was unable to have a legal call with him until January 21, roughly a week after he was detained. Difficulties with scheduling legal calls are even more pronounced given that my client does not speak English fluently and calls require a Pashto interpreter, so I cannot meaningfully communicate with him without predictable scheduled calls.

9.      I understand, from discussions I have since had with my client, that he was put on a flight to Texas the same day he was detained, and within hours of when I received the first contact from his relative.  While at Whipple, he was given one phone call – which he was told could not be longer than two minutes – which he used to call his family member.

10.     The inability to get in contact with my client made it impossible for me to determine the circumstances under which he had been detained, what had occurred, and to make a determination of what legal recourse he had and what steps to take.  After speaking with my client, we filed a habeas corpus petition on January 30 challenging the basis for his detention and seeking his immediate release or a bond hearing.  This process was made more difficult, and delayed, given the need to find and retain local counsel in Texas for the petition.  I have never previously had the need to file a habeas corpus petition for an asylum seeker; nor, to my knowledge, has anyone else at my firm.  Up until recently, I had never heard of a situation in which a habeas corpus petition was necessary in an asylum case as asylum seekers are generally not detained.  Now, these petitions are common.

11.     My client's detention has also resulted in an automatic transfer of his removal proceedings, which are now pending before the Immigration Court in El Paso, Texas.  Shortly after his transfer, I received notice that he has a Master Calendar hearing scheduled for March 5, 2026, in El Paso, Texas.  The preparation of his asylum case while he is detained will be far more difficult.  The duration of legal calls are limited, scheduling legal calls is difficult (especially given the need to coordinate with an interpreter), and my client does not have access to documents and other evidence supporting his claim. For previous hearings, I could meet with my clients in person to prepare for the hearing; now, I will be unable to do so. Barring that, I would need multiple extended, confidential phone calls, and even if ICE would allow that—which it currently will not—they would not be a perfect substitute.

12.     As of the date this declaration was signed, my client is still in detention in Texas. The judge has still not ruled on his habeas petition. I have only been able to speak to him twice – once on January 21st and once on January 30th.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 2, 2026                             *s/ Ryan Young*
                                                    Ryan Young