UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THE ADVOCATES FOR HUMAN RIGHTS, *et al.* | Case No. 0:26-cv-00749 (NEB/DLM) |
| Plaintiffs, | **DECLARATION OF STEVEN JOHN QUAM** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

# DECLARATION OF STEVEN JOHN QUAM

I, Steven John Quam, declare that the following is true and accurate to the best of my recollection.

1. I am an attorney at the law firm of Fredrikson & Byron. I was admitted to the bar in 1994 and am licensed to practice in Minnesota state and federal courts. I am currently the Chair of Fredrikson's Litigation Division and have primarily a real estate-related litigation practice. I devote a significant portion of my practice to pro bono work and pro bono clients. As part of my pro bono practice, I have represented clients in immigration and immigration-related matters.

2. Shortly after 11 a.m. on January 22, 2026, I received a call from the son of one of my pro bono clients. The son informed me that each month, he drives his mother from Anoka to the ISAP Offices in Bloomington, Minnesota so that she can attend a face-to face check with an ISAP officer. The in-person check-ins have been part of her conditional release since August of 2023.

3. My client's son informed me that ICE officers were present at the ISAP office on January 22, 2026, and that they detained his mother.

4. From approximately 11:30 until 3 p.m., I tried to gather information regarding my client's immigration status so that I could evaluate whether a Petition seeking Habeas Corpus would be appropriate. At approximately 3 p.m., I traveled to the Whipple Building in an effort to meet with my client.

5. At the Whipple building, at approximately 3:50 p.m., I informed the employees at the main window that my client had been detained and was in custody and asked if I would be able to see her. I also presented my Minnesota Driver's license and Bar ID Card to the employees.

6. Without asking for my client's name, I was informed that meetings with counsel were not being permitted at that time. To make sure that the information she provided was accurate, the person at the desk made a short call, after which she confirmed that I would not be able to meet with my client.

7. I was further informed that no meeting would be available until my client had been processed and transported.

8. Because I was not able to meet with my client, I was not able to gather the information necessary to prepare a Habeas Petition before she was transported to Texas. Although my client's children attempted to locate the relevant information and documents, they were unable to find the information that would have allowed me to prepare a Petition.

9. My client was transported to Texas on January 24, 2026.

10. I was not able to speak to my client until Wednesday, January 28, 2026, six days after she was detained. Finally, on January 28, 2026, because I was able to speak to my client, I was able to locate the documents and information that will be critical to her Habeas Petition.

11.     My client also informed me that shortly after arriving at El Paso East Camp Montana, Immigration and Custom Officials encouraged her to sign a self-deportation agreement. When she asked if she could make a call to her lawyer to discuss the agreement with a lawyer, the Immigration and Customs Official informed her that she would be able to make a call after she signed the agreement.

12.     Thus far, I have set up four appointments to speak with my client. On two occasions, I was able to successfully reach my client. On both successful occasions, I received calls from El Paso that arrived approximately 30 minutes before the scheduled appointment. I was not able to successfully reach my client on the other two occasions.

Date: February 2, 2026