UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THE ADVOCATES FOR HUMAN RIGHTS, *et al.* | Case No. 0:26-cv-00749 (NEB/DLM) |
| Plaintiffs, | **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

## INTRODUCTION

Although the Eighth Circuit has held that Rule 23(b)(2) "must be read liberally in the context of civil rights suits," *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (quoting *Ahrens v. Thomas*, 570 F.2d 286, 288 (8th Cir. 1978)), Defendants contest every single element of Plaintiffs' Rule 23 showing under narrow and at times plainly incorrect interpretations of the law and the facts. Plaintiffs have alleged that Defendants maintain policies and practices that significantly obstruct Class members' First and Fifth Amendment rights, as well as their rights to counsel of their choosing under the INA. Defendants do not rebut *any* of Plaintiffs' evidence of these common practices, and in fact concede some of them. Nonetheless, they argue that factual variations among Class members—whether or not they were able to make one brief phone call to an attorney and what they need an attorney for—mean that this Court cannot evaluate Defendants' policies in one class action.

If Defendants' arguments were accepted, the Court would need to hear every individual claim regarding the denial of access to counsel one by one, a prospect that is as untenable for the Court as it is for the Class members. Fortunately, this case readily lends itself to class certification under Rule 23(b)(2). The kinds of "[f]actual variations" that Defendants assert do not preclude class certification, because they all "arise[] from the same … course of conduct …, and give[] rise to the same legal or remedial theory." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018) (quoting *Alpern v. UtiliCorp. United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)). Rule 23 "does not require that every question of law or fact be common to every member of the class, and may be satisfied, for example, where the question of law linking the

1

class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (citations and internal quotations omitted). Accordingly, the Court should certify the proposed Class.[1]

## ARGUMENT

### I. The Proposed Class Satisfies the Rule 23(a) Factors

#### A. Rule 23(a)(1)—Numerosity

Defendants begin by disputing numerosity. This is hard to square with their own declaration stating that "there were 48 aliens in custody at Whipple" on the morning of February 3, 2026 alone. Bottjen Decl., ECF 72 ¶ 5. As countless courts have stated, "[g]enerally, a putative class size of forty or more will support a finding of numerosity, although smaller classes have been found acceptable in this circuit." *Hoekman v. Educ. Minn.*, 335 F.R.D. 219, 242 (D. Minn. 2020). The 48 people detained at Whipple just that morning would suffice for numerosity—to say nothing of the people who will be detained there over the coming days and the hundreds or thousands who have been detained there since the beginning of Operation Metro Surge. *See, e.g.*, *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) ("[C]ourts in this circuit

---

[1] As noted in Plaintiffs' opening brief, class certification is not necessary before issuing preliminary injunctive relief. *See* Pls.' Class Cert. Mem., ECF 34 at 3-4 n.1; *see, e.g.*, *A.A.R.P. v. Trump*, 605 U.S. 91, 98 (2025) (affirming injunctive relief without "decid[ing] whether a class should be certified"). Defendants do not dispute this. Nonetheless, Plaintiffs continue to request provisional class certification either with or shortly after the issuance of a preliminary injunction, in order to eliminate any doubts about the basis of the Court's conclusions.

2

have found numerosity where an unknown group may in the future suffer harm.") (collecting cases); *see* Pls.' Class Cert. Mem. at 5-6.

Defendants appear to believe that Plaintiffs must specifically "identify a number of individuals who have been harmed." Defs.' Class Cert. Opp., ECF 71 at 5. This is not the law. "Plaintiffs need not prove the exact number of proposed class members to satisfy the numerosity requirement as long as they can reasonably estimate the size of the class." *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1030 (D. Minn. 2007). Plaintiffs' burden is not to enumerate the Class members with any specificity but simply to show that it is more likely than not that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir. 1983), is not to the contrary; all that it says is that a plaintiff who had not identified "even an approximate size of the class, much less demonstrate[d] impracticability of joinder" fails the numerosity requirement.

Plaintiffs based their estimate on multiple sources of evidence, including eyewitness testimony that Defendants do not dispute, *see* J.J.B. Decl., ECF 27 ¶¶ 12, 14, and statements by Defendants themselves, Press Release, DHS, *ICE Continues to Remove the Worst of the Worst from Minneapolis Streets as DHS Law Enforcement Marks 3,000 Arrests During Operation Metro Surge* (Jan. 19, 2026), https://perma.cc/HVQ5-YEG9; *see also* Compl., ECF 1 ¶ 21; Bottjen Decl. ¶ 5. DHS's statements, J.J.B.'s observations, and Bottjen's declaration all support a reasonable estimate that there are several thousand Class members to date, with more coming in the future. Plaintiffs also pointed to

3

circumstances that make joinder impracticable, like the detainees' limited access to counsel. Pls.' Class Cert. Mem. at 5-6; *see generally Paxton*, 688 F.2d at 559-60 ("In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members."). Defendants have no response to any of these facts or circumstances, and Plaintiffs' showing that joinder would be impracticable is thus unrebutted.

### B.    Rule 23(a)(2)—Commonality

Defendants next challenge whether Plaintiffs' claims present any common questions. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (noting that "even a single common question will do" (cleaned up)). They make three arguments: (1) that Plaintiffs allege "discrete and disparate incidents" rather than "challenging policies that are common to the class"; (2) that differences in detainees' immigration status preclude Plaintiffs' Fifth Amendment and INA claims (but not their First Amendment claim) from posing any common questions; and (3) that Plaintiffs only make allegations about Whipple, rather than other detention sites. Defs.' Class Cert. Opp. at 6-10. These arguments are factually and legally incorrect, but they fail for an even more basic reason: the fact that "individuals are not identically situated" does not defeat commonality as long as the common question "is substantially related to the resolution of the litigation." *Paxton*, 688 F.2d at 561 (quoting *Am. Finance Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974)); *accord Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 798 (8th Cir. 2014) ("The fact

4

that individuals ... will have ... claims of differing strengths does not impact on the commonality of the class as structured." (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995))).

Plaintiffs allege (and support through evidence in their declarations) that Defendants neither provide newly arrested detainees with a way to make confidential attorney-client phone calls nor allow them to meet with their lawyers in-person. *See* Compl. ¶¶ 30, 32-33; Pls.' TRO Mem., ECF 19 at 3, 5-7. Defendants do not dispute this. Indeed, they acknowledge that they do not currently "provide facilities for in-person visitation by legal service providers at Whipple,"[2] Bottjen Decl. ¶ 14, and that the only place that detainees can make phone calls is "in the processing area," *id.* ¶ 12, which is where ICE

---

[2] Paragraph 14 of Bottjen's declaration is incorrect to the extent that it says it is "not possible" to provide facilities for in-person legal visits. Multiple attorneys have sworn that Whipple has visitation rooms that they have used in the past for attorney-client visits. Brown Decl., ECF 22 ¶¶ 27-28; Heinz Decl., ECF 25 ¶ 3. The attorneys' first-hand testimony is more credible than Bottjen's, given that he primarily works not at Whipple but in the Dakotas, Bottjen Decl. ¶ 2, and is testifying based on unidentified second- or third-hand information, *id.* ¶ 3. *See Tincher v. Noem*, No. 25-cv-4669, 2026 WL 125375, at *17 (D. Minn. Jan. 16, 2026), *stayed on other grounds*, No. 26-1105, 2026 WL 194768 (8th Cir. Jan. 26, 2026) (finding that ICE declaration was "entitled to considerably less weight than Plaintiffs' declarations" where it was "not derived from firsthand observations, but from conversations with other DHS personnel, reviews of their written accounts, and review of unspecified information maintained by DHS"); *Perdomo v. Noem*, No. 25-cv-5605, 2025 WL 3192939, at *5 (C.D. Cal. Nov. 13, 2025) (finding Plaintiffs' evidence that Defendants do not "allow for meaningful private communication" stronger than Defendants' rebuttal where "Defendants provide a declaration that speaks to practices that the declarant has been *advised* are *supposed* to occur, and, on the other hand, [plaintiffs] provide multiple, credible, detailed accounts of specific events"). In any event, the parties agree that Defendants are not currently allowing in-person visits.

5

officers process "ERO check-ins" and "arrests," *id.* ¶ 4. Although they say that the *landline* is "unmonitored" and "not recorded," *id.* ¶ 13, they do not dispute that ICE agents are present for and can overhear any conversation. Nor do they dispute the many declarations showing that the only calls detainees could place to attorneys were in an ICE officer's presence. *See, e.g.*, J.J.B. Decl. ¶ 16; J.I.B.C. Decl., ECF 26 ¶ 12; O. Decl., ECF 67 ¶ 6; L.H.M. Decl. ¶ 19. Nor do they dispute Plaintiffs' evidence that Defendants' widespread practice of transferring detainees out of state and failing to make their location available to attorneys further impedes access to counsel. *See, e.g.*, Boche Decl., ECF 20 ¶ 18; Briand Decl., ECF 21 ¶ 12; Edin Decl., ECF 24 ¶¶ 12-15; Heinz Decl. ¶¶ 6-9; J.I.B.C. ¶¶ 22-23; Kelley Decl., ECF 29 ¶¶ 10-11; Weyker Decl., ECF 30 ¶ 16; O. Decl. ¶¶ 15, 18; Allen Decl., ECF 62 ¶¶ 8-17; Glenn Decl., ECF 61 ¶ 7; Young Decl., ECF 63 ¶ 8; Quam Decl., ECF 64 ¶¶ 10-12.

It is thus undisputed that Defendants have a widespread "policy or custom" of denying Class members confidential attorney-client communications. *Postawko*, 910 F.3d at 1038. The existence and lawfulness of that policy or custom are common questions of law and fact that readily satisfy Rule 23(a)(2). *Id.*

Nor does the fact that some detainees manage to call out to an attorney despite Defendants' common practices defeat commonality. *See, e.g.*, J.J.B. Decl. ¶ 16; O. Decl. ¶ 6; L.H.M. Decl. ¶ 24. As the Eighth Circuit has explained, due process requires "*meaningful* access," and "limited opportunity to consult with counsel" and "a lack of privacy in consultations with counsel" can both fall short of this requirement. *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1052 (8th

6

Cir. 1989) (emphasis added); *see also, e.g.*, *Jiang v. Houseman*, 904 F. Supp. 971, 980 (D. Minn. 1995) ("The right to legal advice would be hollow, indeed, if those needing those advices were required to surmount herculean obstacles such as … time which would preclude those who are constrained, by the circumstance of imprisonment, from being able to effectively solicit legal representation.").

Numerous courts have found class certification appropriate in cases where detained non-citizens challenge limitations such as those alleged here. *See, e.g.*, *Mercado v. Noem*, 800 F. Supp. 3d 526, 563, 565 (S.D.N.Y. 2025) (certifying class alleging that phone access was "limited, only telephonic, and not confidential" and left plaintiffs "prevented from or seriously limited in their ability to exercise their right under the First Amendment to consult with and have the advice and assistance of counsel"; *Perdomo v. Noem*, No. 25-cv-5605, 2025 WL 3192939, at *5, C.D. Cal. Nov. 13, 2025) (certifying class where "the key question [is] whether the defendants were respecting the right to counsel 'in substance as well as in name' or treating it 'casually' and 'interfering' with access to counsel" (quoting *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990)); *see also, e.g.*, *Orantes-Hernandez*, 919 F.2d at 561-67 (affirming class-wide injunction); *Arroyo v. U.S. Dep't of Homeland Sec.*, No. SACV 19-815, 2019 WL 2912848, at *10 (C.D. Cal. June 20, 2019) (claims challenging transfers that allegedly "interfere[] with established attorney-client relationships" presented common question).

And even if Defendants did provide meaningful access to some (as-yet unidentified) Class member, occasional deviations from a widespread practice

7

do not defeat class certification. *See, e.g.*, *Bouaphakeo*, 765 F.3d at 797-98; *Gomez v. Tyson Foods, Inc.*, No. 08-cv-21, 2010 WL 6413286, at *7 (D. Neb. Dec. 17, 2010). Were it otherwise, defendants could defeat class certification in all cases merely by departing from their standard practices for a single class member, rendering Rule 23(b)(2) unusable and forcing courts to consider a flood of identical claims. *See also Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (class claims are not about whether rights were afforded "on any particular occasion to any particular inmate (or group of inmates)" but whether "policies and practices of … systemic application expose all inmates in [Defendants'] custody to a substantial risk of serious harm") (cited favorably in *Postawko*, 910 F.3d at 1039).

Defendants' next argument against commonality, that some Class members have final removal orders or are in expedited removal, also fails. As a preliminary matter, they raise this argument *only* in response to Plaintiffs' due process and INA claims; Defendants do not assert that this has any bearing on Plaintiffs' First Amendment claim, and so certification of that claim would proceed even if Defendants' argument had some merit as to due process and the INA.

But it does not have merit. Courts routinely certify claims challenging a common policy or custom that exposes all class members to a risk of the denial of their rights, even though that risk may vary from class member to class member. *See Postawko*, 910 F.3d at 1038-39 (collecting cases); *Coley*, 635 F.2d at 1378 (reversing denial of class certification based on belief that certification "would involve 'so many variations of remedy'" where plaintiffs confined by

8

Defendants challenged the procedures and conditions of that confinement); *Paxton*, 688 F.2d at 561 (reversing denial of class certification even though defendants' "procedures will affect individual [plaintiffs] in different ways because of their diverse qualifications and ambitions"). The fact that one class member may have greater needs than another doesn't defeat class certification if they are all exposed to the same policy or practice. *Postawko*, 910 F.3d at 1038-39; *see also, e.g.*, *Parsons*, 754 F.3d at 678; *Arroyo*, 2019 WL 2912848, at *10 ("That some individuals may suffer a greater burden on this [attorney-client] relationship due to the procedural posture of their proceedings does not defeat commonality."); *Gonzalez v. Noem*, No. 25-cv-13323, 2025 WL 3204602, at *3 (N.D. Ill. Nov. 17, 2025) (rejecting argument that class was overbroad "because some detainees are at Broadview for a few hours and other days").

The differences that Defendants point to are of this nature and do not defeat class certification. Moreover, Defendants significantly overstate those differences. As for Class members subject to a final order of removal, the Supreme Court explicitly held in the very case that Defendants cite that "the Due Process Clause protects an alien subject to a final order of deportation." *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). Although the exact contours of that protection may vary in a particular proceeding, the attorney-client relationship is an indispensable part of *any* exercise of that right. *See Johnson-El*, 878 F.2d at 1051 ("All other rights of an inmate are illusory without it … ." (quoting *Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir. 1973)).

Defendants' statement that all noncitizens subject to a final order of expedited removal have *no* due process right to access to counsel, meanwhile,

9

is simply wrong. Their cited case concerns noncitizens who "ha[ve] not yet 'effected an entry'" into the United States, i.e., those detained at the border. *Las Americas Immig. Advoc. Center v. Wolf*, 507 F. Supp. 3d 1, 39 (D.C. Cir. 2020) (quoting *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020)). The rule for people detained inside the United States is different: "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Indeed, Defendants' own policies highlight the particular importance of consultation for people detained during the expedited removal process; ICE's National Detention Standards state that "[b]ecause expedited removal procedures occur within short timeframes, each facility shall develop procedures that liberally allow the opportunity for consultation visitation." ICE, National Detention Standards 2025 (NDS 2025) at 170, https://perma.cc/4QPT-2VFC.

Defendants do not argue that any Class members were recently detained at the border, and all evidence to date shows Defendants detaining people who are going about their lives in Minnesota—or even arriving for regularly scheduled DHS check-ins, like L.H.M. The more limited due process rights of people at the border is thus irrelevant.

Defendants' last argument against commonality, that Plaintiffs' "sole allegations regarding access to counsel concerns Whipple," Defs.' Class Cert. Opp. at 6, is also wrong. Plaintiffs repeatedly explained that access to counsel is similarly difficult once a class member is transferred out of Whipple,

10

including first-hand accounts from both lawyers who could not reach their clients and Class members who could not meaningfully consult their lawyers. *See, e.g.*, Boche Decl. ¶ 14; Briand Decl., ECF 21 ¶ 11; Edin Decl., ECF 24 ¶ 14; Heinz Decl. ¶¶ 9-10; O. Decl. ¶¶ 12, 14; J.I.B.C. ¶¶ 20-21; L.H.M. ¶ 22. For example, one attorney who has had ten clients transferred to Texas or Nebraska reports that he has only been able to talk with a single one of them. Heinz Decl. ¶ 9. There are thus ample allegations that Class members are being denied access to counsel both while at Whipple and after transfer out of state.

### C. Rule 23(a)(3)—Typicality

Defendants' typicality challenge fails for much the same reason. A class representative does not need to be treated *identically* to other class members; the standard is simply that "other class members have claims *similar* to the named plaintiff." *DeBoer*, 64 F.3d at 1174 (emphasis added); *accord, e.g.*, *Postawko*, 910 F.3d at 1039 ("Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." (quoting *Alpern v. UtiliCorp. United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996))).

L.H.M.'s claims are typical of the absent Class members because all of them were subjected to policies and procedures that prevented meaningful, confidential access to counsel. The fact that she was able to call her lawyer after a day and a half (through subterfuge and with an officer present) while some got no call at all and some got a brief call at a different time is the kind

of "[f]actual variation" that does not "preclude class certification," *id.*, because *all* of the fact patterns described in Plaintiffs' declarations arise from the same policies and give rise to the same constitutional and statutory claims. L.H.M.'s "access to [her] attorneys was limited, only telephonic, and not confidential," which makes her typical of the class. *Mercado*, 800 F. Supp. 3d at 563.

Nor, as explained above, does L.H.M.'s immigration status make her atypical of the Class as a whole. As already explained, "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," have rights under the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Although their rights in particular proceedings may differ, *id.*, all of them have a right to meaningful access to counsel, and Plaintiffs allege that Defendants' practices erect obstacles to anybody with any immigration status effectuating that right.[3]

D.     Rule 23(a)(4)—Adequacy

Defendants' one-paragraph adequacy argument similarly fails. A class representative does not need to show "perfect symmetry of interest" to be adequate; they merely need to not pose an "intra-class conflict" that is "so

---

[3] Defendants do not claim that L.H.M.'s release from custody on January 31 affects the propriety of class certification, despite being aware of her release. *See* Defs.' TRO Opp. at 1 (referring to L.H.M. as a "past detainee"). If they make that argument for the first time at the preliminary injunction hearing, it would be meritless: the Supreme Court has squarely held that a person detained at the time of moving for class certification may continue to represent a class after their release under the "capable of repetition, yet evading review" exception. *See Nielsen v. Preap*, 586 U.S. 392, 403 (2019); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *see also, e.g.*, *Mercado,* 800 F. Supp. 3d at 558 (holding that "inherently transitory" doctrine meant that class action was not moot even though class representative was no longer detained).

12

substantial as to overbalance the common interests of the class members as a whole." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 767 (8th Cir. 2020). Defendants do not posit *any* conflict between L.H.M. and other class members, let alone a "substantial" one.

## II.   The Proposed Class Satisfies Rule 23(b)(2)

The analysis above largely disposes of Defendants' final argument. Just like their commonality and typicality arguments, their Rule 23(b)(2) argument misunderstands or ignores the law and Plaintiffs' evidence of policies and customs that obstruct meaningful access to counsel. In particular, Defendants do not dispute that "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. The relief that Plaintiffs request would ensure that everybody detained by Defendants has "meaningful access" to counsel, as is their right. *Johnson-El*, 878 F.2d at 1052.

Defendants' only remaining arguments have little merit. Courts routinely certify classes regarding due process claims, including within the Eighth Circuit. *See, e.g.*, *Baker v. City of Florissant*, No. 16-cv-1693, 2023 WL 1434261, at *20 (E.D. Mo. Feb. 1, 2023); *Webb v. City of Maplewood, Mo.*, 340 F.R.D. 124, 143 (E.D. Mo. 2021); *see also, e.g.*, *Mercado*, 800 F. Supp. 3d at 564; *Arroyo*, 2019 WL 2912848, at *8-12; *Rodriguez v. Bostock*, 349 F.R.D. 333, 357 (W.D. Wash. 2025) (collecting cases). The Supreme Court didn't say that courts "should hesitate" to certify Rule 23(b)(2) classes bringing due process claims, despite Defendants' assertion. Defs.' Class Cert. Opp. at 13. All it said was that the lower court should "consider" on remand whether class certification of the due process claims remained appropriate after the Supreme Court corrected its misinterpretation of a statute as placing a six-month limit on detention or

13

requiring periodic bond hearings. *Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018). As the Ninth Circuit observed on remand, the proper analysis is whether defendants' procedures fall below "the minimum requirements of due process" for the entire class or subclass. *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 488-89 (1972)). That is what Plaintiffs allege, and that is a question well-suited to class treatment.

Finally, Defendants argue on their last page that people "subject to expedited removal orders" *cannot* be Class members under 8 U.S.C. § 1252(e)(1)(B). Defs.' Class Cert. Opp. at 14. Defendants presumably save this for the end because Section 1252(e)(1)(B) has no application here. That prohibition on class actions only applies to two categories of cases: "review of any determination made under [8 U.S.C. § 1225(b)(1)]" (the expedited removal statute); and "review of determinations under [Section 1225(b)] and its implementation." 8 U.S.C. § 1252(e)(2), (e)(3)(A). Plaintiffs are not asking this Court to review an expedited removal order or determination to place someone into expedited removal, so this case does not fall into the first category. And the second category is limited to "regulation[s] that [are] 'entirely linked' to the expedited removal process"; it does not cover policies that "govern [immigration] more generally and not merely in the expedited removal process." *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1157 (9th Cir. 2022); *see also, e.g.*, *Pablo Sequen v. Albarran*, No. 25-cv-6487, 2025 WL 3283283, at \*11 (N.D. Cal. Nov. 25, 2025) ("§ 1252(e)(3) does not cover challenges to policies or regulations that are merely 'collateral' to the expedited removal process—i.e., policies that affect both noncitizens subject to expedited removal and those

14

entitled to full removal proceedings."); *Arizona v. Garland*, 730 F. Supp. 3d 258, 272-73 (W.D. La. 2024) (same).

Policies and practices impeding access to counsel for *all* people detained plainly "affect both noncitizens subject to expedited removal and those entitled to full removal proceedings." *Pablo Sequen*, 2025 WL 3283283, at *11. For this reason, courts have rejected the government's efforts to evade classwide access-to-counsel claims on the basis of various parts of Section 1252. *See, e.g.*, *Gonzalez*, 2025 WL 3204602, at *5 (rejecting application of § 1252(f)(1) to conditions case); *Perdomo v. Noem*, 2025 WL 3192939, at *9 (same, § 1252(a)(5) & (b)(9)); *see generally Jennings*, 583 U.S. at 293 (claims regarding "conditions of confinement" are not channeled by § 1252(b)(9)). The impediments to counsel that Plaintiffs challenge obstruct Class members' ability to seek *any* form of legal redress, be it a habeas petition, a bond hearing, a challenge to the denial of medical care, or anything else. The fact that, for some Class members, that "anything else" could theoretically include an expedited removal order does not prevent them from obtaining relief that says nothing about the expedited removal process.[4]

## CONCLUSION

For the foregoing reasons and those stated in Plaintiffs' opening motion, the Court should provisionally certify the proposed Class.

---

[4] In any event, if the Court were to accept this argument, or Defendants' argument that people with final orders of removal should not be included in the Class, the proper result would be to narrow the class definition rather than deny class certification altogether. *See, e.g.*, *Burch v. Qwest Comms. Int'l, Inc.*, 677 F. Supp. 2d 1101, 1124 (D. Minn. 2009).

15

Dated: February 5, 2026

Respectfully submitted,

*s/ Alethea M. Huyser*
Alethea M. Huyser (#0389270)
Rachel L. Dougherty (#0399947)
Devin T. Driscoll (#0399948)
Sarah Theisen (#0402844)
Margaret G. Severson (#0504388)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
P: (612) 492-7000
ahuyser@fredlaw.com
rdougherty@fredlaw.com
ddriscoll@fredlaw.com
stheisen@fredlaw.com
mseverson@fredlaw.com

Jeffrey B. Dubner*
Aman T. George*
Mark B. Samburg*
Elena Goldstein*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
P: (202) 448-9090
jdubner@c.democracyforward.org
ageorge@democracyforward.org
msamburg@democracyforward.org
egoldstein@democracyforward.org

*admitted pro hac vice

*Counsel for Plaintiffs*