UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THE ADVOCATES FOR HUMAN RIGHTS, *et al.* | Case No. 0:26-cv-00749 (NEB/DLM) |
| Plaintiffs, | |
| v. | **DECLARATION OF KIMBERLY BOCHE** |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

1

## DECLARATION OF KIMBERLY BOCHE

I, Kimberly Boche, declare the following is true and accurate to the best of my knowledge and recollection.

1. I make this declaration based on my personal observations and statements made directly to me by detained individuals during a visit to the Bishop Henry Whipple Federal Building (Fort Snelling, Minnesota) (the "Whipple" building) on February 9, 2026 between approximately 8:30 am and approximately 10 am.

2. I am submitting this declaration in support of Plaintiffs' request for urgent relief to ensure meaningful access to counsel at Whipple.

3. On February 9, 2026, I entered the Whipple holding center in a group including my program director Hanne Sandison and our attorneys. We were escorted to the area where ICE holds newly apprehended individuals. My purpose was to observe conditions and speak with detainees about access to counsel and related needs.

4. We entered the detention facility from the break room. The facility is centered around an oval of fixed desks with stools on the outside. There are approximately 24 desks in the oval, each of which had a desk phone on it. Immediately surrounding the oval are approximately eight hold rooms (including ones marked as L1, L2, S4, S5, M5, M6, M7), a room marked as "Medical," a room marked as "Admin," a room marked as "Property," and another room on which I could not see any markings. There were approximately 40 detainees in approximately 7 hold rooms.

5. We were shown a small detainee holding cell that was empty and were allowed to test out the phone in the cell. The phone box on the wall looked much like a payphone. I attempted to call my cell phone and when I later reviewed the missed call it said I had missed a call from Marion County Detention Center in Kentucky. To make a call you had to listen to long prompts in English, then in other languages, and plug in the correct numbers before you were allowed to dial out a number.

6. After I was done using the phone, I allowed my peers to try dialing out after I was unable to get connected to anyone on the phone. I attempted to move down the corridor to look at the detainees in the rooms that were not empty and I was chastised by one of the men on the tour with us. I was informed I was to stay with the group while we were all in the same room.

7. During the visit, I personally observed multiple holding cells, occupied by numerous individuals. I also conducted brief, non-confidential interviews with several detainees identified here by first initial to protect their privacy.

8. In the cells, I met S a male detainee who identified himself to me as having lived in the United States for approximately four (4) years. He had been brought in the day before around noon. He told me he did not have an attorney and that he was informed he would be moved to El Paso, Texas. When we spoke, he mentioned he had not yet been able to speak to an attorney or make a phone call.

9. Another male detainee (C) told me he had been in the country for approximately ten (10) years and had been taken into custody the previous day at around 1:00 p.m. C reported he had not received a call to any attorney. He said he was able to access phones in the cell he was in, but did not know what to do or whom to call to obtain legal help.

10. A male detainee (Y) reported he was arrested in Wisconsin. Y said he did not have an attorney but before I was able to finish talking to him, our team was pulled out of the holding cell and were told we had to exit the cell because we were interfering with operations.

11. In the cells where the three men above were located, I personally observed piles of trash, including food packaging, on the floors next to detainees. I did not notice any detainee handbooks in the cells with the detainees. From what I could see, there were no readily available trash receptacles in the areas visible to me, and the trash appeared to accumulate near where individuals were sitting or lying.

12. We were then taken to the women's holding side where one female detainee (M) was pulled out of holding and allowed to speak with us. She told me she had no family locally and no attorney. She stated she was brought to Whipple the previous day at approximately 1:00 p.m., slept overnight at the facility, and did not have a blanket. M also said she did not know she could ask for a blanket and that it was freezing in her holding cell the night before, but no one had blankets. She reported that she had been told she would be moved to Texas that day. Because she felt she had no one to help her on the outside, it remained unclear if she understood there were legal service providers that she could call to help her with her case. When I think about the long and complicated process for dialing out, I don't know how someone in M's shoes would navigate the phone line.

13. Several individuals I spoke with did not have attorneys and did not know how to contact one, despite the presence of phones in certain areas. Based on what they told me, and my own observations, it did not appear that detainees received clear, timely guidance about contacting counsel immediately after apprehension.

14. S, Y and M all reported that they were told of transfers to Texas (El Paso), in some instances before they reported any opportunity to consult with an attorney.

15. Later in our tour, we were shown the ERO meeting rooms that I had used a few weeks before via court order to meet with clients. I walked over to the attorney side and sat in front of my attorney Leah who was on the detainee side. We attempted to have a confidential conversation and were able to hear each other.

16. I took these notes contemporaneously during the visit and have reviewed them in preparing this declaration. I have omitted personally identifying information for detainee safety and privacy.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully Submitted,

Dated: February 10, 2026

/s/ Kimberly Boche
KIMBERLY BOCHE
The Advocates for Human Rights
330 Second Ave. S, Suite 800
Minneapolis, MN 55401
612-746-4673
kboche@advrights.org