UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| The Advocates for Human Rights and L.H.M., through her next friend C.A.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; MARCOS CHARLES, in his official capacity as the Acting Executive Director for Immigration and Customs Enforcement's Enforcement and Removal Operations; DAVID EASTERWOOD, in his official capacity as Acting Field Office Director for Immigration and Customs Enforcement's Enforcement and Removal Operations St. Paul Field Office; U.S. FEDERAL PROTECTIVE SERVICE; and FARON K. PARAMORE, in his official capacity as Director of the Federal Protective Service,,<br><br>Defendants. | CASE NO. 26-cv-00749<br><br>**DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR TAURIA RICH IN SUPPORT OF RESPONDENTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

I, Tauria Rich, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) as Deputy Field Office Director (DFOD) with the St. Paul Field Office. I have held this position since April 2024.

2. I have been employed by ICE since July 2006, holding several positions: Immigration Enforcement Agent; Deportation Officer, handling all aspects of detainee identification, arrest, case management, and removal; Supervisory Detention and Deportation Officer, overseeing of the Criminal Alien Program (CAP) and Fugitive Operations Teams (FOT); Assistant Field Office Director,

DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR TAURIA RICH IN SUPPORT OF RESPONDENTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION 26-CV-00749

1

1 managing FOT, CAP, criminal prosecutions, intelligence, special response team, and sub-offices;
2 DFOD, overseeing all enforcement and removal operations in the St. Paul Area; and serving several
3 times as acting Field Office Director for ERO St. Paul to present.

4     3. As the DFOD of the ERO St. Paul, I direct and oversee all ICE enforcement, detention,
5 and removal operations, as well as federal immigration law enforcement, in Minnesota, Iowa,
6 Nebraska, North Dakota, and South Dakota. This includes matters related to the CAP and Fugitive
7 Operations Program (FOP). I also coordinate with state and local law-enforcement agencies regarding
8 immigration detainers and agreements pursuant to Immigration and Nationality Act § 287(g).

9     4. The statements contained in this declaration are based upon my personal knowledge,
10 reasonable inquiry, and information made available to me in the course of my official duties from
11 information obtained from records, systems, databases, other DHS employees, and/or information
12 portals maintained and relied upon by DHS. I am aware of the instant lawsuit which seeks access to
13 legal counsel while aliens are temporarily detained in holding rooms at the Whipple Federal Building
14 (Whipple). I am aware that the court directed the parties to participate in mediation to resolve the
15 issues Plaintiffs raised in their pending Motion for a Preliminary Injunction and that there is a pending
16 Motion for Provisional Class Certification.

17 **Access to Counsel at Whipple**

18     5. When detainees enter Whipple, there are signs addressing Hold Room processes,
19 including requesting food, water, access to showers, telephone calls, medical processes, parental interest
20 information, Office of the Inspector General (OIG) contact information, as well as signs with information
21 on sexual abuse and information for victims of trafficking. The signs are translated into seven languages,
22 English, Spanish, Russian, Mandarin, Hindi, and Arabic.

23     During in-processing, when a detainee first arrives at Whipple, detainees are provided with copies
24 of all documents that they sign, for example, a Notice to Appear. Written on the Notice to Appear is a
25 notice of rights, which includes the right to an attorney, it explains the right to ask the immigration judge
26 for a bond hearing, and a pro bono list of attorneys. All aliens are provided with individual copies of the
27 Detainee Handbook, which is translated in at least twenty languages. All documentation is explained to
28

DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR TAURIA RICH IN SUPPORT OF RESPONDENTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION 26-CV-00749

2

the aliens in their language by a processing officer and, if necessary, officers use the language service line for translation assistance. Many of our officers are bilingual in Spanish; English is the second language for many of our officers. Additionally, Detainee Handbooks are placed at each of the twelve processing stations and encompasses processes for immigration proceedings in addition to information on how to contact attorneys, information for victims of sex and labor trafficking, what to expect after transfer, general rules of the hold room, how to contact family members, and other helpful information. Aliens may also utilize the free language translation service lines, if needed.

6. During in-processing, detainees are verbally informed that they can make as many free, unmonitored legal calls to their attorneys via an available landline. There is no time restriction on the legal services calls. The legal services calls are not recorded. If detainees wish to make confidential calls, there are five hold rooms that can be made available for confidential calls upon request and if ERO is not using the room for another operational need such as medical isolation.

7. The five small hold rooms cannot be used for in-person attorney visitation because non-law enforcement individuals are not allowed in the detention area, where these rooms are located. It would create a significant safety risk to provide access to these rooms to non-law enforcement individuals. Any change to current operating procedures would require significant resources that Whipple does not have and is not required to have based on ICE Policy. Hold Rooms are not subject to the National Detention Standards because they are not detention facilities.

8. In addition to the five confidential rooms for telephone calls, there are four rooms that currently are not utilized. These rooms have not been used for decades due to a lack of security functions, and the master physical key does not work in any of the rooms. Congress would have to appropriate Fiscal Year 27 funds to renovate the rooms with telephones, sound proofing equipment, document pass-through window, and updated security access, such as a secure Personal Identity Verification card with access code. Additionally, we would require additional ERO officers, who would have to be pulled from other ERO field offices. In sum, it is infeasible to accommodate in-person attorney visits because this would risk the safety and security of detainees, ERO personnel, and attorneys.

9. ERO officers work diligently to complete in-processing and transfer of aliens expeditiously

DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR TAURIA RICH IN SUPPORT OF RESPONDENTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION 26-CV-00749

so that they are not detained at the Whipple hold room longer than necessary, and so that the aliens are transferred to a more permanent detention facility, where they are provided the full benefits afforded to aliens in ICE custody, such as unfettered access to counsel. Most detainees are transferred to a detention facility within 12 hours of arrival at the hold room.

10. Whipple is a transitory facility not staffed for long-term detention accommodation. Requiring ERO to accommodate in-person attorney visits would delay transfers of aliens and would cause issues related to conditions of confinement, especially considering that Whipple is not equipped for providing sleeping accommodation. All St. Paul Field Office facilities within Minnesota are controlled by Intergovernmental Service Agreements in which the counties have 100% control over bedspace. If bedspace is denied in the county, ERO makes accommodations in accordance with policy. Further, even if ERO were to schedule a meeting, there is no guarantee that the detainee would still be present at the facility when the attorney is available.

**Attorney Tour of Whipple**

11. In compliance with the court's orders, ERO facilitated a tour of the ICE hold room at Whipple on Monday, February 9, 2026. The four attorneys and representatives for the Plaintiffs were escorted to the hold room. I understand that two of the attorneys represent Plaintiffs in this action, and the two representatives are attorneys who are employed by or affiliated with The Advocates for Human Rights, which is one of the Plaintiffs in this action. Whipple has a total of 17 hold rooms or cells. The tour started with cell 1, which is reserved for detainee privacy for various reasons. This cell was unoccupied. An attorney for Plaintiffs tried to make an outgoing call and was told it was an invalid number. I attempted to explain to the attorney that, when pre-programmed numbers such as EOIR, pro bono services, OIG, USCIS, consulates, and other non-profit pro-bono numbers, the caller must first input an A-number, needed to be input first. Calls to those telephone numbers are free; however, telephone calls to other phone numbers, like family and friends, are dialed as collect calls. She ignored this and had another attorney enter the cell to try to make a call. The second attorney was able to connect the call and made a collect call.

DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR TAURIA RICH IN SUPPORT OF RESPONDENTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION 26-CV-00749

4

12. All parties were shown the shower, changing, and laundry areas and were given a copy of the ICE Detainee Handbook. They were also shown several documents posted on walls and processing stations indicating how contact with attorneys can be made. An attorney for Plaintiffs asked how long detainees are held at Whipple, to which I explained, 12 hours as this is transitory, for intake and processing only, while we prepare to move them to another facility or for a removal flight.

13. Next, I showed the attorneys the visitor rooms, which had not been utilized in several years. I explained to the plaintiffs again that Whipple is a transitory hold room and contact with attorneys is readily available by phone.

13. As we started to finish the tour, Plaintiffs' attorneys insisted the court's order stated they were to have access to interact with the detainees and check the phones, which they insisted on completing in a fully occupied cell. I will note, throughout the tour, there were a few detainees sitting outside of the hold rooms/cells, the Plaintiffs' attorneys could have asked to interact with, but they did not make the request, nor did they request to bring one or two detainees out of a cell to talk with them

14. All four Plaintiffs' attorneys present insisted, based on their interpretation of the order; they were allowed access to the hold rooms/cells to interact with the detainees and check the phones. Because this presented significant safety issues and interfered with operations, I declined the request. All four plaintiffs insisted and again, repeated they wanted to check the phones in a unit with detainees. This unit contained approximately 15 male detainees and was the only unit available where medical checks had been completed.

15. It is standard operating procedure for safety reasons that civilians are not allowed in the units. Only ERO officers are allowed in the units. Although I thoroughly explained the danger and safety issues, the plaintiffs insisted, so I reluctantly agreed and had to pull five detention officers from other operational responsibilities to provide security. Plaintiffs' attorney tried the phones while the other attorneys spoke with some detainees. Plaintiff's attorney could not connect to the line until he was given a detainee A-number. He turned to one of the detainees and asked him, "have you used the phone?" to which the detainee answered "yes" and told him the phone worked fine for him.

16. In total, Plaintiffs' attorneys were in the cell for approximately 10 minutes, so I

DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR TAURIA RICH IN SUPPORT OF RESPONDENTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION 26-CV-00749

5

signaled to the parties that the tour would need to end soon. Besides the significant safety issue, the tour began to interfere with operations because the detainees needed to be processed or prepared for transfer. While still in the cell, all four of Plaintiffs' attorneys argued with me and the officers and stated that they were not given enough access to interact with the detainees and could not speak with enough of them. I also reminded them that the tour and interaction with detainees was now interrupting operational responsibilities. We needed everyone to exit to a secure area. The Plaintiffs' attorneys refused, walked back over to where the shower area was and began engaging in debrief. After prodding continued, Plaintiffs' attorneys finally agreed and exited the hold room to a secure area.

17. In her filed declaration regarding the tour, Kimberly Boche submitted that it appeared that several of the detainees had not received timely guidance about contacting counsel immediately after apprehension. It is standard operating procedure to inquire at in-processing whether detainees have a G-28 (Notice of Entry of Appearance as Attorney or Accredited Representative) on file. The detainee rights are listed in every Detainee Handbook, and the attorney pro bono list is in every hold room next to the telephone. Detainees are prompted to select their language first when they call a telephone number on the pro bono list. It should be noted that none of the attorneys arrived with G-28s signed by detainees or claimed to be counsel for any detainees who were present at Whipple that day.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 12, 2025, in Minneapolis, Minnesota.

Tauria Rich
Deputy Field Office Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR TAURIA RICH IN SUPPORT OF RESPONDENTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION 26-CV-00749

6