UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| THE ADVOCATES FOR HUMAN RIGHTS, *et al.* | Case No. 0:26-cv-00749 (NEB/DLM) |
| Plaintiffs, | **DECLARATION OF LILIANA ZARAGOZA** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

---

I, Liliana Zaragoza, declare the following is true and accurate to the best of my knowledge and recollection.

1. I am an associate clinical professional of law and director of the Racial Justice Law Clinic at the University of Minnesota School of Law. I supervise nine law students who are temporarily barred under my supervision. Since the beginning of Operation Metro Surge, my clinic has represented eight noncitizens in their habeas petitions. I am part of a collective of federally-barred attorneys who typically work across a range of issue areas and who have been working together and volunteering to fill the rising need for attorneys able to file habeas petitions in federal court. I am licensed to practice in the states of Minnesota and New York, the United States District Courts for the District of Minnesota and the Eastern District of New York, the United States Courts of Appeals for the Fifth and Eleventh Circuits, and the Supreme Court of the United States.

2. My practice is typically not in habeas petitions, but I have jumped in because of the great need for legal representation brought about because of ICE's actions.

3. My clinic filed six habeas petitions before Judge Brasel issued a TRO in *Advocates for Human Rights v. Dep't of Homeland Sec.*, 26-cv-749, ECF 95 (D. Minn. Feb. 12, 2026) ["Order"] on Thursday, February 12, 2026.

4. Since the Order, we have filed two habeas petitions, both on February 20. One of the petitions was for a client who was detained in December. In the week before we filed his habeas petition, his location disappeared from the Online Detainee Locator System ("ODLS"). When I searched his name and A-number, the result page said "call ICE for details." We used the "unknown custodian" theory of jurisdiction to argue that jurisdiction was proper in Minnesota. His

petition was granted within one week. We filed the second petition the day the client was arrested. Unlike most of our clients pre-TRO, he was not transferred out of state. He was apprehended in Maple Grove, Minnesota, briefly detained at the Bishop Henry Whipple Federal Building ("Whipple"), and then transferred to Sherburne County Jail before his release.

5. I have noticed a slight difference in the way ICE is operating the past few weeks after the Order. When we started filing habeas petitions, ICE was almost immediately putting our clients on a plane to Texas. In some instances, we would hear that a client was detained and would rush to file a habeas petition by the next morning. In normal times, this would be considered quick. But during Operation Metro Surge, even filing the next day ran the risk of our client already being put on a plane to Texas—that was the case for five of our clients. We have only filed one habeas petition so far post-TRO, but that client was not immediately transferred to Texas nor was he transferred out of state during his six days in detention.

6. While our clients should never have been detained in the first place, it is helpful to our representation of clients that they remain in the state after arrest. Once ICE transfers a client out-of-state, we have to address jurisdictional issues before we can even get to the substance of their unlawful arrest and detention. Moreover, most clients don't have any connections to the state they are transferred to, making it even harder for them to find representation and support. Indeed, when I was in the ERO office in Whipple a few days ago, I overheard someone, a former detainee there to pay the rest of his bond, say that before his transfer to Texas, he had never been out of Minnesota since he came to the U.S.

7. In the cases in which we have successfully received Orders granting a habeas petition, I have forwarded the Orders and Judgments to the St. Paul Field Office's email address. I have never received an email confirming receipt or indicating that the Client would be released at a particular date or time.

8. In several cases, the Court has ordered that Respondents inform Counsel of the date and time of our clients' release or at least provide a two-hour window of when our clients might be released. I have never received such information from Respondents, before or after the TRO.

9. Our client who was detained after the TRO did not receive a notice of rights when he was detained at Whipple. ICE agents there tried to force him to sign a self-deportation order and told him he didn't have a right to be here. They repeatedly tried to get him to sign his rights away but he stood firm. Then, unlike my pre-TRO clients, he remained in Minnesota and was released promptly after the court granted his habeas petition.

I declare the foregoing is true and accurate to the best of my knowledge.

Dated: March 6, 2026                                     /s/ Liliana Zaragoza
                                                          Liliana Zaragoza