UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THE ADVOCATES FOR HUMAN RIGHTS, *et al.* | Case No. 0:26-cv-00749 (NEB/DLM) |
| Plaintiffs, | **DECLARATION OF EMILY CURRAN** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

I, Emily Curran, declare the following is true and accurate to the best of my knowledge and recollection.

1.  I am an attorney based in Saint Paul, Minnesota. I work as a litigator at a legal non-profit called Housing Justice Center. Since the beginning of Operation Metro Surge, I have represented fourteen noncitizen clients in their habeas petitions. I am licensed to practice in the state of Minnesota and the United States District Court for the District of Minnesota.

2.  I filed eleven habeas petitions in the couple months before Judge Brasel issued a TRO in *Advocates for Human Rights v. Dep't of Homeland Sec.*, 26-cv-749, ECF 95 (D. Minn. Feb. 12, 2026) ["Order"] on Thursday, February 12, 2026. During this time, most of my clients were rapidly transferred from Minnesota to Texas. These rapid out-of-state transfers inhibited my ability to represent my clients and forced substantial motions practice over jurisdiction and to enforce judges' orders prohibiting transfer in the first place, bogging down the courts. Moreover, my clients who were transferred to Texas have told me about the horrific treatment they endured on the journey to, and while detained in El Paso. ICE shackled their legs, waists, and wrists on the flight to El Paso; one client told me the shackles restricted him so much that he wouldn't be able to reach the oxygen mask if there was an emergency on the plane. Another client urinated on himself during the flight to El Paso because ICE wouldn't let him go to the bathroom. Once in El Paso, clients told me that they had to beg ICE for medical attention for themselves and their cellmates. They reported horrible communication amounting to "psychological torture," where one ICE officer would tell them that they were soon returning to Minnesota while another ICE officer would tell them that that information was wrong and that they are not being returned to Minnesota. My clients reported that the cells in El Paso were extremely cold and the food was almost inedible.

3. One of my clients, who has been in the United States since he arrived as a refugee in 2005, reported that ICE agents in El Paso told him that they were going to deport him to his country of origin. When he told them that a war was still going on in this country, they laughed and said that they would just deport him to Mexico or some other country. This conversation occurred after his habeas petition had been granted and he was waiting to be returned to Minnesota and released.

4. Since the Order, I have filed two habeas petitions for recently detained clients, one on February 18 and the second on February 19. I also filed one more on behalf of a client detained in late December. In stark contrast to my experience before the Order, both recently-detained petitioners were kept in Minnesota after initial processing at Whipple. I did not have an opportunity to connect with them when they were at Whipple – they were only there for a short period of time – and in that time I was racing to file habeas petitions on their behalf. Both were transferred to Sherburne.

5. As the habeas petitions I filed assert, both of my clients detained since the Order were unjustly arrested and held. But, it is much easier for me to represent them while they are in Minnesota than if they were in Texas. The ability to do an in-person visit makes it easier to consult with them about filings and the facts of their case, and their continued detention in Minnesota negates the need for motions practice about jurisdiction or moving to show cause in the event of unlawful transfer following a court order prohibiting such transfer (as I have had to do multiple times in my previous cases). My clients staying in Minnesota also prevents significant worry on my part, and my clients' loved ones part, about where the client is, since the Online Detainee Locator System ("ODLS") would typically go dark for over a day when the client was moved out-of-state.

6. Though some things have improved since the Order, there are still obstacles to representation. Two of my clients are detained at Sherburne County, which is not on the ICE/ERO e-file communication system. This system allows attorneys to set up confidential phone or video calls with detained clients. This means that I cannot have confidential communications with my client detained at Sherburne unless I go in person. With the pace of habeas petitions, it is not always feasible for me to drive an hour each direction when I need to quickly contact my client to get his information. It is my experience that other county jails that are being used as ICE detention facilities are also not supported on the ICE e-file system, including Freeborn and Kandiyohi.

7. ODLS has been a mixed bag since the Order. One client detained at Sherburne did not show up on ODLS for nearly a day, so his family reached out to me, concerned he was being transferred out-of-state. He had heard rumblings about the 72-hour hold on transfers out-of-state from the order and had told his family earlier, in a call from the facility, that he was worried that the 72-hours was a ticking time-bomb, and that he would be moved to Texas after the time was up. ICE was prevented from moving him out of state due to the initial order in his habeas case

preventing out-of-state transfer, but he knew of others who had been transferred despite court orders and was concerned.

8. I frantically emailed the AUSA, David Fuller, and the St. Paul Field Office email address (stpaul.outreach@ice.dhs.gov) about this client. I did not get an answer from either. I was able to call Sherburne, and after a couple attempts, was able to speak to a staff sergeant who told me my client was still there but could not confirm whether he was getting transferred. Luckily, the client is still there.

9. I email the St. Paul Field Office email address almost every time I get a judge's order. When I started doing habeas petitions in January 2026, I did not get any responses from that email address. Within the last couple weeks, I have started to get customer service like responses from the email address (to the effect of "we are working diligently to get back to you . . .") but have rarely gotten an actual response. I tried calling the St. Paul Field Office on Friday, February 27, because ICE lost my client's driver's license, but the line just kept ringing. No one answered. I have tried calling the St. Paul Field Office in the past few weeks about similar client matters but it always feels pointless because no one picks up.

10. Out of my 14 cases, nine have been granted, two were voluntarily dismissed, one is pending, and two were denied.

I declare the foregoing is true and accurate to the best of my knowledge.

Dated: March 6, 2026                                       /s/ Emily Curran
                                                          Emily Curran