UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THE ADVOCATES FOR HUMAN RIGHTS, *et al.* | Case No. 0:26-cv-00749 (NEB/DLM) |
| Plaintiffs, | **DECLARATION OF LYLE CHERNEFF** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

I, Lyle Cherneff, declare the following is true and accurate to the best of my knowledge and recollection.

1. I am an attorney based in Minneapolis, Minnesota. I am the Liman Law Fellow at Legal Rights Center ("LRC"). At LRC, I work on the First Defense Project, an initiative to expand access to early-stage counsel for arrestees in Hennepin County. Since the beginning of 2026, I have represented several noncitizen clients in their habeas petitions in a pro bono capacity. I am licensed to practice in the state of Minnesota, the United States District of Minnesota, and the United States District of New Mexico.

2. I first attempted to visit the Bishop Henry Whipple Federal Building ("Whipple Building") around the beginning of January 2026. I went to Whipple to attempt to perform a legal visit with a U.S. citizen arrested during the protests following the murder of Renee Good. When I tried to drive in to Whipple, the guards were resistant to letting me through the gates. They refused to identify themselves by full name and they told me that there was "no way" that I was getting in. They said that Whipple was closed to members of the public, to which I responded that I am a lawyer there to see a U.S. citizen client. They said that there were no U.S. citizens being detained at Whipple, which I knew was not true. I was eventually permitted entry, but it took over an hour of waiting outside, and I faced significant resistance by numerous agents.

3. Before Judge Brasel issued a TRO in *Advocates for Human Rights v. Dep't of Homeland Sec.*, 26-cv-749, ECF 95 (D. Minn. Feb. 12, 2026) ["Order"] on Thursday, February 12, I did not attempt to go to Whipple to see detained noncitizen clients. I had been told by many colleagues that ICE was not permitting attorneys to see noncitizen clients. My experience informed me that I generally only had a few hours from the moment I heard a client was detained by ICE to

when that client would be transferred to Texas. I typically needed to spend that limited time rushing to file a habeas petition to preserve venue in Minnesota and it did not seem like a prudent use of my time to attempt to go to Whipple when I knew I would likely just be denied entry.

4. A colleague sent me a copy of the Order the evening it was issued. It felt like awash of relief. Rapid transfers of detainees to Texas have made this work particularly difficult, imposing intense urgency on rapid filing, making it even harder to represent clients, and heartbreaking to have to communicate to clients' families that their loved one is no longer in Minnesota.

5. On Friday, February 13, I received a request for legal assistance from a family member of a person detained that morning by ICE. The family believed that the client was presently being held at the Whipple building. I checked the ICE Detainee Locator and it displayed the person's location as being at the Whipple Building. I had never seen Whipple be listed as a place of detention on the ICE Detainee Locator site. Generally, before the Order, the locator just said "call ICE" during the window of time when a detainee was likely at Whipple.

6. By around 3:30 pm on February 13, I filed a habeas petition for the client. It has been my practice to file habeas petitions as quickly as possible upon finding out a client has been detained, since ICE has been transferring detainees out of state so rapidly.

7. After filing the habeas petition, I decided to go down to Whipple to try to see my client, feeling hopeful that because of the Order I would be able to see the client in person. An intern from my office accompanied me. We got to Whipple around 4pm. The officials at the entry told me that the building closed at 4pm, so they weren't sure whether we would be let in for a legal visit, but they complied with our request to be allowed to ask the front desk. We went to the front desk and gave the person there the A-numbers of my clients (I also wanted to see if another client of mine who had been returned from Texas the day prior was still there). We learned that the client who was detained before Friday morning had already been moved to Sherburne County, but that the other client was still at Whipple.

8. We were brought into one of the ERO visitation rooms. We closed the door on outside and then an ICE agent brought my client in on the other side of the room. He was ankle-cuffed and still in his street clothes. The agent then left and closed the door behind him.

9. The room seemed relatively private. It made such a difference to be able to meet and talk with my client. He was able to show us documents that ICE had given him, which we could then take pictures of for our records. I can't further describe our conversation without revealing attorney-client confidences, but it materially assisted my ability to represent him in his habeas proceeding, including with preparing a reply brief in support of his habeas petition for filing the following Monday.

10. We talked for a while before an ICE agent came in and told us that they were moving my client to Freeborn County Detention Center because they didn't want him to spend the night at Whipple. I asked the ICE agent for a few more minutes and he allowed it.

11. After the visit was over, I returned home and called my client's mother to tell her that I had met her son and had filed a habeas petition on his behalf. It made a lot of difference to be able to tell a client's loved one that I had seen their family member after ICE had arrested them.

12. As far as I am aware, ICE took my client to Freeborn County that evening.

13. The ICE agents' behavior towards us was night and day from what I had experienced before the Order. It made a world of difference to be allowed inside Whipple to meet a client.

14. That weekend, I sent an email to the stpaul.outreach@ice.dhs.gov, attaching the Court's order directing ICE not to move my client outside of Minnesota. I wasn't expecting a response from them. Every other time I emailed that email with a habeas order in the past, the office had never responded. This time, I got an email back from the account on Monday morning, telling me that my client was presently detained at Freeborn County.

15. I have also tried calling the St. Paul ERO Field Office but that phone generally just rings and rings without answer.

16. On February 16, a federal judge in Minnesota granted my client's petition and ordered his release. ICE complied with this order and released my client within the timeframe ordered by the Court.

I declare the foregoing is true and accurate to the best of my knowledge.

Dated: March 6, 2026                                                          /s/ Lyle Cherneff
                                                                                               Lyle Cherneff