

**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation

P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-3097
christina.parascandola@usdoj.gov

March 23, 2026

***The Advocates for Human Rights v. Noem*, No. 0:26-cv-00749-NEB-DLM (D. Minn.).**
**Defendants' Letter Brief**

Dear Judge Brasel:

Defendants submit this letter in response to the Court's order on March 20, 2026, for the parties to file letter briefs to cover specified matters. The Court directed the parties to address: (1) violations occurring at facilities that are documented in the record, and whether a variation among the facilities would preclude class certification or how it would affect class certification; and (2) whether the scope of injunctive relief could or should properly reach facilities other than the U.S. Immigration and Customs Enforcement (ICE) holding facility within the Whipple Federal Building, especially given that the counties operating the jails are not Defendants.

**I.      Variation among facilities other than the ICE holding facility within the Whipple Federal Building precludes certification, given developments since the filing of the complaint, affecting detainee access to counsel while at Whipple and the absence of pleading supporting Plaintiffs' claims as to the county facilities in Minnesota.**

Plaintiffs seek to provisionally certify a class defined as "all persons initially detained by Defendants in Minnesota pursuant to the Immigration and Nationality Act (INA)." ECF No. 32. 4, 36. In their complaint, filed on January 27, 2026, ECF No. 1, Plaintiffs claim that Defendants: prevent Plaintiffs from retaining, consulting, and communicating with counsel, in violation of the First and Fifth Amendments (Counts 1 and 3), preventing Plaintiffs from exercising statutory privileges under 8 U.S.C. § 1229a(b)(4)(A) and 8 U.S.C. § 1362 (Count 4), and constituting an unlawful agency action, under 5 U.S.C. § 706(2)(A) (Count 5), and unexplained change in policy (Count 8); and failing to abide by the National Detention Standards (NDS), which Plaintiffs claim is arbitrary and capricious under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (Count 6), and for which there exists no adequate remedy at law (Count 7).

To obtain class certification, plaintiffs must meet all four requirements of Federal Rule of Civil Procedure 23(a), namely, numerosity, commonality, typicality, and adequacy of representation, and must fall into one of the categories of Rule 23(b). *Adams v. U.S. Bancorp*, No. 22-CV-509 (NEB/LIB), 2025 WL 2530910, at *4 (D. Minn. Apr. 4, 2025) (Brasel, J.). A district court considering a motion for class certification must undertake a rigorous analysis to ensure that the requirements of Rule 23(a) are met, *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011), which frequently will entail "considerations that are enmeshed in the factual and legal issues

comprising the [ ] cause of action," *Adams*, 2025 WL 2530910, at \*5 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).  Thus, a district court may resolve disputes going to the factual setting of the case if necessary to the class certification analysis.  *Bennett*, 656 F.3d at 814.

The commonality requirement of Rule (23)(a)(2) considers whether the proposed class presents common questions of law or fact that are amenable to class-wide resolution.  "The mere presence of one or more common questions is not enough; rather, the district court must examine the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Adams*, 2025 WL 2530910, at \*5 (quoting *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1038 (8th Cir. 2018) (internal quotation omitted).  The typicality requirement of Rule 23(a)(3) looks at whether the claims and defenses of the named plaintiffs are typical of claims or defenses of the proposed class.  This requirement is met when the claims or defenses of the class representatives and the proposed class members "stem from a single event or are based on the same legal or remedial theory." *Id*. (citing *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 356 (D. Minn. 2012) (other citation omitted).

### A. Plaintiffs cannot show commonality, because they have not pled or shown denial of access to counsel in Crow, Freeborn, Kandiyohi, or Sherburne County jails.

Plaintiffs allege facts in their complaint regarding only the ICE holding facility at Whipple.  ECF No. 1 ¶¶ 22, 26-33, 36, 37.  Plaintiffs do not plead with any particularity that immigration detainees are denied access to counsel, or that counsel are denied access to their clients detained under the INA, at county jails in Minnesota.  ECF No. 1.  Plaintiffs do not specify any county jails by name in their complaint or motion for class certification. *Id*.; ECF No. 34.  Last month Plaintiffs acknowledged the absence of a robust record regarding practices at other facilities. *See* Status Conf. Tr. (Feb. 25, 2026) at 16-17.  Plaintiffs subsequently submitted declarations by a couple of attorneys attesting to their contacts with detainees at county facilities in Minnesota. *See* Dec. of Pamela Guerrero (Mar. 6, 2026), ECF No. 144 ¶¶ 12-14 (attesting that the staff at Kandiyohi County Jail did not schedule attorney-client phone calls when Guerrero called or emailed but passed along Guerrero's messages to detainees, when Guerrero spoke with clients she did not think that the phone line was private because she heard voices in the background, Sherburne County Jail only allows attorneys to schedule phone calls with clients by email, and Freeborn County Jail allows attorneys to schedule phone calls with clients by calling their master control office and will bring the detained client in for a phone call at the scheduled time); Dec. of Emily Curran (March 6, 2026), ECF No. 142 ¶ 6 (attesting that Curran could not have confidential communications with a client detained at Sherburne unless she went there in person).

Defendants begin with the assumptions that all immigration detainees in Minnesota will be detained initially at ICE' s Whipple holding facility, for processing, and that, due to developments since February 12, 2026, including changes in policies and practices at the Whipple holding facility, Plaintiffs' claims in this action, as to Whipple, either have withered or have substantially less support than they did when Plaintiffs filed their complaint.  Therefore, assuming that Plaintiffs seek class certification based on alleged restrictions on access to counsel at Minnesota county jails, the initial question for the Court would be whether the allegations about access to counsel at the county jails constitute restrictions or privations and, if they do, then whether such restrictions or privations rise to the level of a constitutional violation, under *Bell v. Wolfish*, 441 U.S. 520, 539

(1979) (Counts 1 and 3). Further, for each facility the Court must determine how to resolve any constitutional violations. Given that Plaintiffs' declarants testified to different kinds of possible deprivations, such as the staff at the Kandiyohi jail not passing along messages, or the Sherburne jail apparently not providing detainees private telephone calls but allowing in-person meetings with their counsel, the Court would have to determine whether a violation exists and the resolution, which likely would differ depending upon the facility. As to Counts 4, 5, and 8, the Court would have to determine whether, based on the pleadings and evidence in the record, any restriction on access to counsel amounts to a deprivation of a statutory entitlement or change in policy that is arbitrary and capricious. Any claims of lack of access to counsel based on the March 6 allegations would be resolved by ordering measures common to detainees at the particular county facility, such as all immigration detainees at Kandiyohi, or all immigration detainees at Sherburne County. As to Counts 6 and 7, commonality is most clearly lacking, considering that the ICE NDS do not apply to the county facilities (although other ICE standards do) and the NDS do not apply to ICE holding facilities, such as the Whipple facility.

> **B. Plaintiffs cannot show typicality, because the claims of the sole individual Plaintiff L.H.M. are based upon past events that have ended.**

Defendants presented the testimony of the Deputy Field Office Director (DFOD) Tauria Rich attesting to measures that the St. Paul Field office has taken at Whipple to comply with the Court's Temporary Restraining Order (TRO) that the Court issued on February 12, 2026, and developments since the drawdown of Operation Metro Surge (OMS). Evid. Hrg. Tr. (March 20, 2026) at 283-433. Conversely, Plaintiffs have presented no evidence of an immigration detainee's inability, after February 2026, to reach counsel, or of an attorney being denied access to her client detained in Minnesota. While a couple of attorneys testified at the evidentiary hearing on March 19 and 20, 2026, that more recently than February 2026 they were not able to reach someone when they called the St. Paul Field Office Public Outreach telephone number, these attorneys likely were not calling the telephone number that ICE posts on its website. *Compare* Tr. at 47, 114, 118, *with* Tr. at 318-19. Therefore, Plaintiffs do not appear to have established that detainees at Whipple are denied access to counsel, or that attorneys who represent immigration detainees at Whipple are denied access to their clients.

Sole individual Plaintiff L.H.M. submitted a declaration attesting to being denied access to counsel while in immigration custody in January 2026. *See* ECF No. 77 ¶ 19 (attesting to, while detained at Whipple, asking six times and being limited to one, non-private telephone call, on January 28, 2026, of ten minutes in duration); *id.* ¶ 20 (attesting to being denied a visit by counsel but talking on the phone with counsel on January 30, 2026); *id.* ¶ 22 (attesting to not being permitted to make a phone call while detained at Kandiyohi). Those events took place before the TRO and during OMS. Since then, the St. Paul Field Office detains people for much less time, on average, in the Whipple holding facility, and has dedicated two private rooms to providing detainees private phone calls with their attorneys, among other measures. *See, e.g.*, Tr. at 308, 312, 314. Given these changes and the absence of any allegations since the end of February 2026 of restrictions on access to counsel, any claims of lack of access to counsel by someone detained at Whipple today would be based on a different set of circumstances than in January 2026. L.H.M.'s claims of being denied access to counsel would not be typical of a detainee claiming a denial of access to counsel since March 1, 2026. Nor would L.H.M.'s claims stem from the same legal or remedial theory, considering that any possible claims of deprivation of access to counsel today

would be based on entirely different circumstances than those faced by L.H.M. in January 2026. Even if L.H.M. herself were re-detained and sought access to counsel while at Whipple, any remedy would differ significantly from the remedial measures that the Court has ordered and that are in place now. Defendants also oppose the designation of L.H.M. as a class representative considering that Plaintiffs' counsel have not revealed L.H.M.'s identity to Defendants, and Defendants have not been able to confirm or deny the veracity of L.H.M.'s allegations.

## II.     Injunctive relief as to Crow, Freeborn, Kandiyohi, or Sherburne County jails is not warranted.

Given that Plaintiffs have not pled or alleged any significant restrictions on access to counsel rising to the level of constitutional or statutory violation or action that is arbitrary and capricious or otherwise unlawful, at the Minnesota county jails, injunctive relief as to those facilities is not warranted. Crow, Freeborn, Kandiyohi, and Sherburne Counties house detainees under the INA pursuant to Intergovernmental Services Agreements (IGSAs), also referred to as detention-bed contracts, with ICE Enforcement and Removal Operations, and are subject to various standards promulgated by the U.S. Department of Homeland Security. ICE may enter into an IGSA with county governments that guarantee to provide bed space for ICE detainees, and to provide the clothing, medical care, food and drink, security and other services specified in the relevant ICE detention standards. ICE informs undersigned counsel that the counties often inform ICE that they do not have bed space available. ICE further informs undersigned counsel that, if the Court were to order injunctive relief, many variables, including differences among the facilities and the need to consult with the contracting officer to determine the burden of compliance with the terms of such relief, preclude ICE from providing a position on the Court's question at this time.

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

GLENN M. GIRDHARRY
Acting Deputy Director

WILLIAM C. SILVIS
Assistant Director

s/ *Christina Parascandola*
CHRISTINA PARASCANDOLA
Senior Litigation Counsel
ANDREW C. ABRAMS
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 514-3097
christina.parascandola@usdoj.gov